James PAUTLITZ, et al., Plaintiffs,

v.

**CITY OF NAPERVILLE, Defendant.**

**No. 89 C 8855.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 23, 1994.

834

Mark H. Mennes, Jac A. Cotiguala, Cotiguala & Mennes, Chicago, IL, for plaintiffs.

Melissa Anne Staubitz, Bell, Boyd & Lloyd, Marvin J. Glink, Jennifer Ann Pritz, Ancel, Glink, Diamond, Cope & Bush, Eugene Joseph Kelley, Jr., David Manchester Lefkow, Arnstein & Lehr, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This FLSA overtime case, described by us in an earlier opinion as "seemingly interminable," is before us today once again. As the facts have been reviewed extensively in our earlier opinions, and we need not revisit them here. We have already decided liability, and earlier denied a motion for summary judgment on the question of liquidated damages. After a bench trial on the question, we find the City liable for liquidated damages under the Act.

1. This issue was extensively reviewed in our earlier Memorandum Opinion in this case, *see Pautlitz v. City of Naperville*, No. 89 C 8855, slip op.

## I. *Liquidated Damages* [1]

Section 216(b) of the Fair Labor Standards Act ["FLSA"], provides for liquidated damages in the form of doubling the award for unpaid overtime compensation or unpaid minimum wages. 29 U.S.C. § 216(b) (Supp.1993). As originally written, the FLSA made doubling mandatory. *Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 581, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682 (1942); *Walton v. United Consumers Club,* 786 F.2d 303, 310 (7th Cir.1986). However, the 1947 amendment to the Act altered the doubling provision to make it discretionary, but left a strong presumption in favor of doubling. Thus, under the present scheme, double damages remains the norm, while single damages are the exception. *Walton,* 786 F.2d at 310.

Under section 11 of the Portal-to-Portal Act, codified at 29 U.S.C. § 260, the court has "considerable discretion," *Walton,* 786 F.2d at 308, to decline to double the award where the employer can show "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act...." 29 U.S.C. § 260. The employer's burden under section 260 is a "difficult one to meet." *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908 (3rd Cir.1991) (same), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). *See also, Kinney v. District of Columbia,* 994 F.2d 6, 12 (D.C.Cir.1993) (employer faces "substantial burden"); *Laffey v. Northwest Airlines,* 567 F.2d 429, 464–65 (D.C.Cir.1976) (same), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

The burden on the employer under section 260 has been explained by the Seventh Circuit as follows. The employer must show that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA. *Walton,* 786 F.2d at 312. "A good heart but empty head does not produce a defense; objective criteria are highly val-

1994 WL 22963 (N.D.Ill. Jan. 24, 1994), and we borrow generously from that earlier work herein.

ued here as in other inquiries into 'good faith,' not the least because corporations such as [the defendant] do not have subjective mental states." *Id.* (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 815–20, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982)). Further, "[The Supreme Court] has explicitly rejected a subjective standard." *Id.* (*citing Trans World Airlines v. Thurston,* 469 U.S. 111, 126 n. 19, 105 S.Ct. 613, 624 n. 19, 83 L.Ed.2d 523 (1985)). *Cf. Klein v. Rush–Presbyterian–St. Luke's Medical Center,* No. 90 C 7491, 1991 WL 337535, * 8 (N.D.Ill Dec. 26, 1991) (Norgle, J.) (quoting *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907–08 (3rd Cir. 1991) for the contrary proposition that good faith prong of test is subjective while reasonableness prong is objective); *Williams v. Tri–County Growers,* 747 F.2d 121, 129 (3d Cir.1984) (same).

■ The only question before us is whether Naperville has satisfied its burden to show that it acted in good faith and had reasonable grounds to believe that its classification of the Plaintiffs was in compliance with the FLSA. As we noted earlier, to meet this burden, the City must show that it took "affirmative steps to ascertain FLSA requirements but, nonetheless, violated its provisions." *Klein,* No. 90 C 7491, 1991 WL 337535, * 8. Failure to take affirmative action to ascertain the Act's requirements "precludes a finding of *reasonable* good faith," even where the defendant's practices conform to industry customs and where there is no evidence of a willful violation of the Act. *Martin,* 940 F.2d at 908–09. Thus, a showing that the violations were not willful falls short of the employer's burden under section 260. *Martin,* 940 F.2d at 909 (*citing Tri–County,* 747 F.2d at 129).

■ Reasonable good faith can be established by an employer's proof that its officials attended seminars regarding the FLSA, reviewed the law, and consulted with counsel. *See, e.g., Lee v. Coahoma Co., Miss.,* 937 F.2d 220, 227 (5th Cir.1991). However, "courts generally appear to have required a showing that the employer received advice on the specific compliance issue in question, not just that he sought advice about the statute." *Kinney,* 994 F.2d at 12 (*citing Hultgren v.*

*County of Lancaster,* 913 F.2d 498, 509 (8th Cir.1990)).

■ We have no doubt that the City acted in good faith in its attempts to comply with the statute. The City presented testimony by both Mr. DeSantis, the City Manager, and Ms. Byard, the Personnel Manager, that amply demonstrates a desire to treat employees fairly. To that end, the City presented considerable documentation of its efforts to comply with the FLSA in general. When the Act was first applicable to Naperville, the City sent personnel to seminars and consulted with counsel regarding its compensation system. It also hired consulting firms on two separate occasions to review its compensation structure. Indeed, Naperville has established a pattern of reasonable conduct concerning general compliance with the Act.

However, the City has designated little if any evidence concerning its attempts to inquire into the specific compliance question at issue, the exempt status of the police sergeants of Naperville. There are two particularly relevant pieces of evidence on this issue. We find that neither meets the City's burden.

First, the City points to the Anderson Report as evidence of its good faith compliance efforts on the exempt status of the Sergeants. However, there is no evidence that Anderson reviewed Naperville's classifications. To the contrary, such a review was not part of the express terms of the contract between Anderson and the City, (Def.Ex. 8), and it appears that Anderson simply accepted the City's classifications as they were. Indeed, on July 27, 1987, as reflected Def.Ex. 13, Ms. Byard learned that Anderson had not done a review of the FLSA status of the Naperville employees. Ms. Byard then asked if any of the positions should be changed and was advised that the position of Planner and Civil/Electrical Engineer should be changed to exempt. While this suggests Anderson finally did look at FLSA questions, there is nothing to suggest that Anderson specifically examined the status of the police sergeants. Further, no one at Anderson purported to be a labor lawyer specializing in the FLSA. We find that reliance on the

Anderson Report was not reasonable under the circumstances.

The second piece of evidence designated by the Defendant is a letter from Barbara Byard, City Personnel Manager, to one of the City's outside counsel, asking for a written opinion on the legality of the exempt status of Police Sergeants. (Def.'s Ex. 7.) The letter states:

> Attached are copies of job descriptions for the Police Sergeant positions as well as a list of exempt positions from Administrative Directive # 8. Ralph DeSantis has asked me if we had a written opinion from you as to whether these positions are exempt. I know we reviewed them in relation to the FSLA and concluded they met the exemptions but maybe we should look at it again and have something in writing.... Please let me know if you think the exemptions are OK.

(July 2, 1986 letter, Group Ex. 3.) In our January 24, 1994 Memorandum Opinion & Order, we found that the letter left genuine issues of fact concerning Naperville's good faith and reasonableness:

> From this letter, we can glean that Byard had reviewed the exempt status issue with counsel, but, for one reason or another, had renewed anxiety concerning it and sought a new opinion. Such conduct is the beginning of good faith and reasonableness. However, no response to that inquiry is provided in the Defendant's exhibits. In her deposition, Byard could not recall what positions she reviewed with counsel or what, if any, responses she received in writing. (Dep. of Barbara Byard, Group Ex. 8 at 13–15.) The net result of the evidence as designated by the Defendant is that Defendant was concerned about the specific compliance issue at hand and consulted counsel. What we do not know, and cannot ascertain on the current state of the evidence, is what counsel's opinion regarding legality was and what, if any, action was taken by the City in response.

*Pautlitz*, No. 89 C 8855, slip op. at 6 (N.D.Ill. Jan. 24, 1994.)

Even after trial, no evidence has been adduced about the response to Byard's letter. One reading of this letter is to accept Byard's assertion that she reviewed the sergeants' FLSA status with Murphy and that Murphy orally opined that the sergeants were exempt. Thus Byard was merely writing to seek a written opinion for the City's files. If this was all that was involved we might comfortably find objectively reasonable good faith compliance. However, we now know considerably more about the "renewed anxiety" that we speculated upon in our earlier Memorandum Opinion, and that caused Byard to send the letter. City Manager Ralph DeSantis testified he instructed Byard to send the letter because he was:

> Probably ... concerned about the exempt relationship either as its gonna [sic] relate to the Anderson report ... or there might have been something that Manager Smith ... had mentioned to me, some concern. To be prompted to ask this question so early in my tenure would have indicated to me that there was a concern about the established clarification of the exempt position.

(Tr. of DeSantis, Friday, June 17.) While we denied the Motion for Summary Judgment because there were issues of fact concerning reasonableness in light of the unclear motivation for the letter and the unknown response to it, Mr. DeSantis' testimony sufficiently fills the gaps. Mr. DeSantis makes it clear that Byard was directed to consult with the City's labor attorney because some concern about the validity of the exempt status had arisen, rather than merely to ask that an earlier conclusion be in writing. This explanation fits with the portion of the letter that says "maybe we should look into it again."

When the City's conduct is put within that framework, its claim of reasonableness must fail. We hold that it is not reasonable to request a legal opinion in response to "concerns" about the exempt classification, receive no response, and yet pursue the issue no further. As we noted above, the Defendant faces a substantial burden to nullify doubling under section 260. *Kinney,* 994 F.2d at 12; *Martin,* 940 F.2d at 908; *Laffey,* 567 F.2d at 464–65. On the evidence presented, we cannot find that the City has met its burden of showing that it acted with a

reasonable belief that its conduct did not violate the FLSA.

### *Conclusion*

While we find that the City acted in good faith, we also find that it has not made the substantial showing required to show that its conduct was objectively reasonable. The Plaintiffs are entitled to liquidated damages.