**AIR LOGISTICS OF ALASKA, INC.,**
Appellant/Cross–Appellee,

v.

**David THROOP, individually and on be-
half of all similarly situated persons,**
Appellee/Cross–Appellant.

Nos. S–12169, S–12189.

Supreme Court of Alaska.

April 11, 2008.

Gregory A. Miller, Birch, Horton, Bittner & Cherot, Anchorage, for Appellant/Cross–Appellee.

William B. Schendel, Schendel Law Office, Daniel E. Winfree, Winfree Law Office, Fairbanks, for Appellee/Cross–Appellant.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION ON REHEARING*

MATTHEWS, Justice.

## I. SUMMARY

Air Logistics of Alaska, Inc., violated the Alaska Wage and Hour Act (AWHA) by failing to include several pay items in the regular rate of pay when calculating the overtime rate of one-and-a-half times the regular rate. Air Logistics claims that even though it paid overtime for hours during which field mechanics were on-call, it should only be liable for damages for overtime hours the mechanics recorded as actually working. Since we find that the on-call time was compensable for the purposes of the AWHA, we hold that Air Logistics is liable for damages for all of the overtime hours paid and affirm the superior court's grant of summary judgment on the question of compensable hours. The superior court erred, however, by granting David Throop summary judgment for the contract claim. While it is true that the overtime provisions of the AWHA are expressly incorporated into all employment contracts, the limitations in the statute are

incorporated as well. Since Throop has no viable breach of contract overtime claim, his recovery is governed by the two-year statute of limitations for AWHA violations rather than the three-year statute of limitations for contract claims. We reverse the superior court's grant of summary judgment to Throop on the contract claim.

We affirm the superior court's holding that liquidated damages under the AWHA were inappropriate and remand for a recalculation of attorney's fees in accordance with this opinion.

## II. FACTS AND PROCEEDINGS

Air Logistics of Alaska, Inc., is a Fairbanks-based helicopter company. Prior to 1990 Air Logistics paid its mechanics on a salary basis. It revamped its pay policy in 1990 in response to a Department of Labor ruling issued concerning one of its competitors. This ruling held that helicopter mechanics were no longer considered exempt from overtime provisions as professionals and therefore should be paid on an hourly basis rather than a salaried one. Under Air Logistics's new hourly pay plan, mechanics working in the field at remote locations worked on a rotating schedule with two weeks on and two weeks off.[1] Air Logistics paid the field mechanics for ten hours of work per day. Of these hours, two per day and any hours over forty per week were paid at an overtime rate of one and one-half times the mechanics' regular rate of pay. The mechanics were paid this amount regardless of the hours they actually worked, but they recorded the hours they actually worked in a separate column on their time sheets. They usually worked fewer than ten hours—often working only a few hours per day.

In addition to the hourly rate, Air Logistics paid its mechanics several "add-ons," such as extra pay when they were in the field, pay for travel, various safety bonuses, and Christmas bonuses.[2] Some of these

---

1. Air Logistics's primary client is Alyeska Pipeline Service Company and the remote locations were needed so helicopters could access remote parts of the pipeline. The mechanics in Fairbanks worked normal eight-hour shifts and were only paid overtime for hours actually worked.

2. The "add-ons" listed in Throop's complaint included the following: remote operations pay

were calculated on a daily or monthly basis (for example, travel pay was $30 per day of travel), and some were calculated on an annual basis (for example Christmas pay was $500 per year). Air Logistics calculated the overtime hourly wage by multiplying the regular hourly wage by 1.5. It did not include any of the add-ons in the regular rate of pay when calculating the overtime wage.

David Throop worked for Air Logistics from 1979 until 2003. He worked as a mechanic from 1999 on. He initiated this case approximately one month after Air Logistics terminated his employment in March 2003. At that time, Throop filed a class action complaint claiming that Air Logistics violated the AWHA and breached its employment contract by failing to include the add-ons as part of the regular rate of pay when calculating the overtime rate.[3]

After Throop submitted his complaint, Air Logistics asked the Alaska Department of Labor and Workforce Development (DOL) to issue a written opinion regarding which of the add-ons should be used when calculating overtime. In July 2003 Randy Carr, who was then chief of DOL's Wage and Hour Administration Labor Standards and Safety Division, opined that five of the add-ons— remote operations pay (ROP), travel allowance pay, tool allowance pay, Christmas bonus pay, and impact awards for safety pay— were properly excluded from each employee's regular rate of pay when calculating overtime but that the advisory station operator pay, inspector authorization pay, major awards for safety, and seasonal safety awards should be included in the regular rate of pay. Carr also stated that when calculating overtime Air Logistics should "use only actual hours of work as opposed to compensated hours ... where a reliable record of the actual hours exists." Air Logistics then

paid damages equaling the difference between the overtime rate that its employees had been paid and the overtime rate the employees would have received if the regular rate had been calculated to include the four add-ons that Carr suggested. These amounts were calculated using overtime hours from the actual work columns of the timesheets, rather than using all of the overtime hours paid. The total amount, after an adjustment for a miscalculation, was $6,527.55.

Throop dropped his claim as to four of the remaining add-ons, leaving ROP as the only contested add-on. The superior court granted summary judgment in favor of Throop on the question of whether the ROP should be included in the regular rate of pay. After this ruling and after consulting with the director of the DOL on the issue, Air Logistics paid damages for the ROP add-on. This amount, $20,842.83, was also based on overtime hours recorded as actually worked rather than all overtime hours paid.

Air Logistics moved for summary judgment on the issue of how to calculate overtime pay. Air Logistics noted that its mechanics were often paid for more hours than they recorded as actually working and argued that it should only pay any additional overtime amounts for overtime hours the mechanics actually worked, rather than the hours for which they were paid. Throop filed a cross-motion for summary judgment on the same issue, arguing that class members should receive back pay for any differential in overtime rates for all of the overtime hours they were paid for, not just the hours they recorded as actually working. The superior court granted summary judgment in favor of Throop.

---

(ROP) or field pay, travel pay, advisory station operator pay, inspection authorization pay, safety plan pay, voluntary participation plan pay, and Christmas pay. The safety pay apparently broke up into three parts: impact awards for safety pay, major awards for safety, and seasonal safety awards.

**3.** In April 2004 Superior Court Judge Richard D. Savell certified a class of approximately forty-five individuals consisting of "[a]ll hourly paid em-

ployees of Air Logistics who worked at any time from April 16, 2000, through March 28, 2003," who received any of the contested add-ons: remote operations pay; advisory station operator pay; inspector authorization pay; major safety award pay; or seasonal safety award pay. After the opt-out period there were thirty-nine people remaining in the class. The plaintiff class is referred to collectively as "Throop" in this opinion.

Air Logistics also moved for summary judgment on Throop's contract claim. Air Logistics argued that it had fulfilled all of its contractual obligations and that Throop was impermissibly trying to bring a contract claim to extend the two-year statute of limitations for AWHA claims to the three-year statute of limitations for contract claims. Throop filed a cross-motion for summary judgment, arguing that since the AWHA was incorporated into employment contracts, Air Logistic's violation of the AWHA also constituted a breach of contract. Throop also argued that his actual employment contact—consisting of a letter of hire and Air Logistics's policy manual—supported an independent contract claim. The superior court granted Throop's motion for summary judgment on the contract claim, finding that since the AWHA was implicitly and explicitly incorporated into employment contracts, Air Logistics breached its contract by violating the AWHA. The superior court concluded that therefore the contract statute of limitations was appropriate.

Prior to trial the parties stipulated to the amount of damages owed by Air Logistics for unpaid overtime compensation and interest. The only issues remaining for trial were whether the court would impose liquidated damages and injunctive relief upon Air Logistics. After a bench trial, the superior court found "that AirLog established by the 'clear and convincing' standard that it subjectively believed it complied with the law, and that its subjective belief was objectively reasonable." Therefore, it held liquidated damages and injunctive relief were inappropriate. The final judgment imposed $22,420.70 in damages against Air Logistics for the contract claim and $65,608.93 for the AWHA claim but subtracted three "catch-up payments" already made by Air Logistics totaling $27,370.38. The superior court also awarded the class prejudgment interest of $16,442.37, attorney's fees of $16,320.42, and costs of $10,118.41. The total final judgment after subtracting the catch-up payments was $103,540.45.

Air Logistics appeals the superior court's grant of partial summary judgment with respect to hours worked and the contract claim. Throop cross-appeals the superior court's failure to impose liquidated damages on Air Logistics and the superior court's award of attorney's fees.

## III. DISCUSSION

### A. Summary Judgment Was Appropriate on the Issue of Compensable Hours.

 The superior court granted partial summary judgment to Throop on the question of compensable hours, holding that all of the hours paid counted as hours worked under the AWHA. A grant of summary judgment is reviewed de novo.[4] We will affirm

> if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, all reasonable inferences of fact from the proffered evidence must be drawn against the moving party and in favor of the non-moving party.[5]

Air Logistics argues that the hours paid did not accurately reflect the hours the mechanics actually worked because the mechanics at remote sites were free to do as they pleased for many hours every day. Air Logistics cites several federal cases finding that employees were not paid overtime in similar situations and notes that the DOL has consistently maintained that only hours worked should be used for overtime calculations. Air Logistics also argues that even if Throop disputes the issue of whether the mechanics were actually working during the entire pay period, this raises questions of fact, such as how the mechanics spent their time, sufficient to preclude summary judgment.

Throop argues that work hours under AWHA can be defined by agreement between the employee and the employer and that the agreement between Air Logistics and its employees established that all of the paid hours should be used to calculate overtime for AWHA purposes. Throop also

4. *DeNardo v. Bax,* 147 P.3d 672, 676 (Alaska 2006).

5. *Id.* at 676–77 (citation omitted).

notes that Air Logistics's pay stubs only report the scheduled hours paid, not the actual hours worked. Throop argues that since the DOL regulations require an employer to disclose the weekly hours actually worked to an employee,[6] Air Logistics repeatedly violated this regulation unless all hours paid are counted as hours worked.

At oral argument the superior court seemed to base its holding on the fact that the pay stubs only reflected the ten-hour day that the employees were paid and did not contain an entry for the number of hours actually worked. It emphasized the DOL requirement that the employer provide the employee with an earning statement that shows the hours actually worked. The superior court indicated that Air Logistics would have prevailed if it had recorded the number of hours actually worked on the pay stubs.

■ We have doubts about this approach. It is true that DOL regulations require the employer to communicate the actual hours worked for each pay period to its employee.[7] It is also true that Air Logistics failed to do this. However, there is no indication in the regulations that failure to provide this information to employees will result in all hours paid being considered hours worked for the purposes of the AWHA. While an employee could certainly bring a complaint against Air Logistics for such an omission, and the DOL could choose to penalize Air Logistics, the regulations do not mandate the superior court's outcome.

■ Instead it is necessary to look to the statute to determine whether all of the pay hours were compensable under the AWHA.

The AWHA requires an employer to pay employees at the overtime rate of one and one-half times the regular rate for "*hours worked* in excess of eight hours a day" or forty hours a week.[8] Thus in order to determine whether Air Logistics is liable for the correct overtime rate for all of the hours paid, it is necessary to determine whether the employees were actually working for the purposes of the AWHA. The key question in this analysis is to what extent employees can use their time for their own purposes.[9]

■ There is very little Alaska case law dealing with the question of whether an employee's use of time is restricted to such an extent that it should be classified as compensable under AWHA. There is, however, substantial federal jurisprudence dealing with the similar question of whether an employee's time should be counted as compensable for the purposes of the Fair Labor Standards Act (FLSA).[10] In *Armour & Co. v. Wantock*, the United States Supreme Court noted the following:

> Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer.[11]

6. 8 Alaska Administrative Code (AAC) 15.160(h) (2004).

7. *Id.*

8. AS 23.10.060(b) (emphasis added).

9. The DOL's regulations concerning overtime specify that "periods of 'on call' and 'standby or waiting time'" should be counted towards overtime unless "the employee is completely relieved of all duties for 20 minutes or more during which the employee may use the time effectively for the employee's own purposes." 8 AAC 15.100(c). The definitions for "on call" time and "standby or waiting time" in the DOL regulations also emphasize the importance of determining if an employee's time can "be used effectively for the employee's own purposes." 8 AAC 15.910(a)(9), (13).

10. 29 U.S.C. § 201–19 (2007). In *McKeown v. Kinney Shoe Corp.*, this court noted that the AWHA is based on the FLSA. 820 P.2d 1068, 1071 n. 2 (Alaska 1991). While "federal court interpretations of the FLSA are not binding on Alaska court interpretations of the AWHA ... we have found the federal court interpretations of the FLSA helpful in interpreting consistent aspects of the AWHA." *Id.* (citation omitted).

11. 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944).

In other words, to quote *Armour's* companion case *Skidmore v. Swift & Co.*, "[f]acts may show that the employee was engaged to wait, or they may show that he waited to be engaged." [12]

The jurisprudence dealing with this question covers widely varying situations. In *Skidmore*, the United States Supreme Court noted that it would be imprudent to "lay down a legal formula to resolve cases so varied in their facts." [13] Federal courts have, however, looked to two predominant factors when dealing with this question: "(1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties." [14] This court adopted this analysis in *Hutka v. Sisters of Providence in Washington*. [15] The following subsections will address both factors in turn.

### 1. The employees' freedom to engage in personal activities

■ In *Owens v. Local No. 169, Ass'n of Western Pulp & Paper Workers*, the Ninth Circuit set out many of the factors courts have considered when determining the "degree to which the employee is free to engage in personal activities":

(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. Such a list is

illustrative, not exhaustive. No one factor is dispositive. [16]

Since the court granted Throop summary judgment on this issue, we resolve any factual disputes in favor of Air Logistics. We assume for the purposes of this appeal that the mechanics in the field were not required to stay on the work site itself, that they had no set response time requirement, that they could carry radios that served as pagers, that calls to work were infrequent, and that they actually engaged in personal activities during hours while they were on-call.

The on-premises living requirement (factor 1) favors Throop, [17] as does the fact that the employees could not easily trade shifts (factor 5), since there was generally only one mechanic in a remote area. But the infrequency of calls (factor 3), the lack of a fixed response time (factor 4), the availability of radios that worked as pagers (factor 6), and the fact that many employees actually engaged in personal activities (factor 7) favor Air Logistics. The remoteness of the locations—inaccessible by car—means that the mechanics were constrained geographically in a general sense (factor 2), which favors Throop. But the employees were not geographically constrained in the sense that they had to remain at the work site, which favors Air Logistics. Thus a cursory look at the factors suggests that, taken together, they could favor Air Logistics.

However, the fact that the mechanics were in remote areas weighs heavily in favor of Throop. Several of the factors that favor Air Logistics are less important when one considers that the employees were in isolated locations for extended periods of time. Their ability to leave the work site, the lack of any fixed response time, the availability of a radio that worked as a pager, and the fact that

---

**12.** 323 U.S. 134, 137, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

**13.** *Id.* at 136, 65 S.Ct. 161; *see Armour,* 323 U.S. at 133, 65 S.Ct. 165 ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.").

**14.** *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers,* 971 F.2d 347, 350 (9th Cir.1992) (footnotes omitted).

**15.** 102 P.3d 947, 959 (Alaska 2004) (citing *Owens,* 971 F.2d at 350).

**16.** 971 F.2d at 350–51 (footnotes omitted).

**17.** Technically the mechanics were not required by Air Logistics to live on premises, but Air Logistics conceded that "given that the field locations were far from any town, they did so."

they actually engaged in personal activities must be viewed in this context. It is true that the mechanics could hike, fish, read, watch movies, or work out. But they could not shop, go out to eat, run errands, work on their houses or cars, spend time with friends, or do anything else one would normally do in the community where one resides. They were not allowed to bring their families to two of the remote stations, and even at the other stations they could presumably only do so if their family members had no work or school commitments for the two weeks in question. Because of the way the schedule was set up, the employee had to suffer these restrictions for two full weeks, rather than just for one shift lasting for a day or less.

A Ninth Circuit case, *Brigham ex rel. Estate of Brigham v. Eugene Water & Electric Board,* involved a situation with similar facts.[18] As with the present case, the employees were in a remote location and on-call for a certain number of hours each week.[19] They also had an on-premises living requirement, received infrequent calls, and routinely engaged in personal activities while they were on-call.[20] The facts were more favorable to the employees' case because the employees were required to stay within earshot during their on-call shift,[21] but less favorable to the employees because they had the ability to trade shifts.[22] Thus the *Brigham* facts are comparable to the present case. In *Brigham* the Ninth Circuit found the facts to favor the employees.[23]

If the *Owens* factors favored the employees in *Brigham,* then the Air Logistics employees should prevail. While the *Brigham* employees were in a remote area, it was accessible by car and only seventy miles away from Eugene, Oregon.[24] Thus when they were not on-call or working they could actually go into a town or have friends visit them. The *Brigham* employees lived with their families,[25] so they could spend time with them even when they were on-call and required to stay on premises.[26] Finally, the on-call shifts for the *Brigham* employees only lasted twenty-four hours, and there was generally only one shift per week.[27] By comparison, the Air Logistics employees were required to stay in the remote location with no access to any town, even when they were not on-call, for fifteen full days, during which they were unable to spend any time with their friends or in many cases their families.

We find that the isolated and inaccessible location and the extended period of time spent there by employees outweigh the other factors that favor Air Logistics. Thus, the *Owens* factors favor Throop.

### 2. The employment agreement

The second factor to consider is the agreement. An agreement to pay overtime while an employee is on-call does not necessarily mean that the time spent by the employee is compensable under wage and hour law.[28] That said, however, "an agreement

---

18. 357 F.3d 931 (9th Cir.2004).

19. *Id.* at 933–34.

20. *Id.* at 936–37.

21. *Id.* at 936.

22. *Id.*

23. *Id.* at 938.

24. *Id.* at 933–34.

25. *Id.*

26. *Id.* at 937.

27. *Id.* at 934, 936–37.

28. In *Paniagua v. City of Galveston,* for example, the plaintiff argued that his employer's "agree-

ment to pay him five and one-half hours of overtime for each week he was on standby makes his standby time compensable under the FLSA." 995 F.2d 1310, 1316 (5th Cir.1993). The court disagreed, stating the following:

> The City's agreement to pay Paniagua five and one-half hours overtime for each week spent on standby does not alter our conclusion.... [T]he City Personnel Director who drafted the standby pay provision testified that it was designed to compensate employees for the *inconvenience* of being on standby; the use of five and one-half hours overtime per week is merely the formula the City has chosen to quantify the inconvenience. In short, the City's agreement to compensate employees for inconvenience does not, in our view, automatically render the time spent on standby "working time" under the FLSA.

*Id.* at 1317; *see Reimer v. Champion Healthcare Corp.,* 258 F.3d 720, 725–26 (8th Cir.2001); *Ber-*

between parties is one factor that the fact finder properly should consider."[29] In *Berry v. County of Sonoma*, the Ninth Circuit discussed the significance of employment agreements in resolving whether time is compensable under the FLSA:

> The significance and importance of evaluating the agreements between the parties is that the existence of such agreements assists the trier of fact in determining whether the parties characterized the time spent waiting on-call as actual work. An agreement between the parties which provides at least some type of compensation for on-call waiting time may suggest the parties characterize waiting time as work. Conversely, an agreement pursuant to which the employees are to be paid only for time spent actually working, and not merely waiting to work, may suggest the parties do not characterize waiting time as work.[30]

Under this analysis, the fact that Air Logistics agreed to compensate its employees at their regular rate and pay them overtime for any hours scheduled over eight per day/forty per week weighs in favor of the employees.[31]

It is also relevant that the employees were effectively required to reside on the premises. There is a Federal Department of Labor Wage and Hour Division interpretive regulation that deals with situations, such as this one, in which employees are "residing on employer's premises or working at home":

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. *It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.*[32]

This interpretive regulation, while not binding, is persuasive authority.[33] In *Brigham*, the court found that even though the *Owens* factors discussed above favored the employees, the agreement was reasonable and thus controlling under 29 C.F.R. § 785.23.[34]

In *Brigham* the employees were on-call for a twenty-four-hour period, of which they actually worked for approximately six hours.[35] Under their agreement they were compensated for ten hours of work.[36] In looking at whether the agreement was reasonable, the *Brigham* court noted "the pressures and other constraints imposed on employees by virtue of their on-call duties," and concluded there was "no reason why these factors cannot be accounted for as work time equivalents given the ways in which they diminished the otherwise unfettered enjoyment of the employees' time while on-call."[37] Thus, the court found that "the parties' agreement treating the otherwise formally uncompensated duty shift call time as equivalent to four hours' actual work is eminently reason-

---

*ry v. County of Sonoma*, 30 F.3d 1174, 1180 n. 5 (9th Cir.1994); *Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir.1984).

29. *Allen*, 724 F.2d at 1136; *see Owens*, 971 F.2d at 354.

30. 30 F.3d at 1180–81.

31. It is true that Air Logistics deemed the hours "pay hours" and mentioned in its personnel manual that the field mechanics would be paid even when they worked fewer hours. But we do not think these caveats override the basic point: by agreeing to pay the employees an overtime rate for the hours in question Air Logistics indicated that it considered the on-call time to be work.

32. 29 Code of Federal Regulations (C.F.R.) § 785.23 (2007) (emphasis added).

33. *See Leever v. Carson City*, 360 F.3d 1014, 1020 n. 4 (9th Cir.2004) ("We accept the Department of Labor's interpretive regulations of the FLSA, including § 785.23, as persuasive, although they are not binding.").

34. 357 F.3d at 941.

35. *Id.* at 934.

36. *Id.*

37. *Id.*

able."[38]

This analysis can be applied to the case at hand. Here, the employees performed a few hours of actual work each day, were on-call for ten hours, and were required to remain in a remote location twenty-four hours per day. Under their agreement they were paid for ten hours a day. This agreement—that a few hours of work, ten hours of on-call time, and twenty-four hours in a remote location is equivalent to ten hours of actual work— appears reasonable. Thus we find that the agreement to pay the employees ten hours per day favors the employees under the Federal DOL interpretive regulation.

Since the facts viewed in favor of non-movant Air Logistics favor the employees with respect to both of the *Hutka* factors— the employees' freedom to engage in personal activities and the employment agreement—summary judgment on this issue was appropriate.

### B. Throop's Contract Claim Is Covered by the Two–Year Statute of Limitations in the AWHA.

The standard of review for summary judgment is discussed above in Part III.A.

In addition to alleging direct violations of the AWHA, Throop also claimed that Air Logistics breached his employment contract by violating the AWHA. Air Logistics moved for summary judgment on this claim, arguing that there was no factual dispute regarding whether Air Logistics paid the members of the class everything that was required by the terms of their contract. Air Logistics argued that Throop was trying to use the contract claim solely to extend the statute of limitations from two years, for AWHA claims, to three years, for contracts. Throop filed a cross-motion for summary judgment on the same issue, arguing that contracts incorporate applicable law. Throop argued that Air Logistics breached "its contractual obligation to pay overtime" by violating AWHA's overtime provisions. Throop also argued that his employment contract (a letter of hire and the company policy manual) required the pay-

ment of overtime in terms that were either ambiguous or illegal. He contended that if the terms were ambiguous they should be construed in a manner that is consistent with AWHA. If illegal, Throop argued that AWHA should simply be substituted for the illegal terms.

The superior court granted Throop's motion for summary judgment on the contract claim. The superior court noted that the AWHA expressly incorporates its overtime requirements into all employment contracts. It also noted that, under general rules of contract interpretation, employment contracts incorporate all applicable laws. According to the superior court, "allowing a contract claim to proceed alongside an AWHA claim does [not do] violence to the legislature's intent in setting a two-year statute of limitation for AWHA claims" because AWHA and contract law offer different remedies: AWHA offers liquidated damages whereas contract law offers only actual damages. The court then held that the parties "contracted in the shadow of wage and hour law, aware that its provisions set the scope of the permissible terms for their contract. They could have, and should have, reasonably expected their contract to be interpreted in light of these provisions." It granted Throop's summary judgment motion, approving his contract claim and enabling Throop to recover actual damages (but not liquidated damages) for three years rather than two.

 Alaska Statute 23.10.060 sets out the overtime provisions of the AWHA. Subsection (c) states that "[t]his section is considered included in all contracts of employment." Alaska Statute 23.10.130 sets out the statute of limitations for AWHA claims, stating that "[a]n action for unpaid minimum wages, *unpaid overtime compensation*, or liquidated damages under AS 23.10.050–23.10.150 is forever barred unless it is started within two years after the cause of action accrues."[39] Throop makes two arguments concerning his breach of contract claim. He argues first based on an incorporation theory that because Air Logistics violated the overtime provisions of AWHA and because those

---

38. *Id.* at 942.

39. AS 23.10.130 (emphasis added).

provisions were incorporated by law into his contract of employment, his contract of employment was breached. His second argument is that his actual contract, as reasonably construed, required the payment of overtime in accordance with AWHA. We address each of these claims in the paragraphs that follow, beginning with the incorporation theory.

 Under *Gore v. Schlumberger Ltd.*, when AWHA overtime requirements are incorporated into a contract, the limitations in AWHA are as well.[40] In *Gore* the employee requested punitive damages for a violation of the overtime claim of the AWHA.[41] The court noted that the AWHA "prescribes with comprehensive specificity the remedies available for its violation" and held that "[t]he comprehensiveness of this remedial system implies that the legislature did not intend to allow further unenumerated remedies" such as punitive damages.[42] The court then addressed an argument similar to Throop's contract claim: whether the appellant was entitled to punitive damages under a contract theory. The employee in *Gore* noted that AS 23.10.060 incorporates the overtime provisions into employment contracts and argued that the employer had breached the contract by violating the AWHA.[43] The employee then argued for punitive damages under a breach of contract theory, arguing that "if a contract is willfully violated punitive damages should be available."[44] This court rejected this

claim, holding that "if the statute is a part of every contract, so are its limitations."[45]

The analysis in *Gore* is applicable to Throop's incorporation theory. The employee in *Gore* alleged a breach of contract solely on the basis of a violation of the AWHA overtime provisions, emphasizing that the provision was expressly incorporated into contracts by the statute. The employee in *Gore* requested punitive damages, which were available for contract claims but not AWHA claims. Throop is requesting a three-year statute of limitations, which is available for contract claims but not AWHA claims. In *Gore* we held that since the statute was incorporated into the contract, its limitations must be incorporated as well. While *Gore* dealt with limitations on the type of damages available, we believe it is also applicable to limitations regarding the duration for which damages can be recovered. Thus, under *Gore*, Throop can only recover on his incorporation theory for violations that occurred during the two-year statute of limitations period that is set out in AS 23.10.130.

 The *Gore* approach ensures that effect will be given to the AWHA's statute of limitations provision.[46] Under Alaska law all employment is contractual.[47] If we were to adopt Throop's incorporation argument, any employee who alleged a violation of the AWHA overtime provisions could simply plead a breach of contract based on the incorporation of the overtime statute into the employment contract. All overtime claims

40. 703 P.2d 1165 (Alaska 1985).

41. *Id.* at 1165

42. *Id.* at 1165, 1166.

43. *Id.* at 1166. AS 23.10.060 is not mentioned in the opinion, but the appellant in *Gore* relied upon this provision in his brief. *Gore* notwithstanding, one might wonder whether the AWHA limitations on the right of overtime recovery that are expressed in sections other than AS 23.10.060 are incorporated into contracts of employment by operation of AS 23.10.060(c). Subsection (c) expressly incorporates only "this section," that is AS 23.10.060, not other sections of the AWHA: "This section is considered included in all contracts of employment." Nevertheless, we believe that the incorporation of the statutory right to overtime necessarily encompasses statutory limitations on that right. For example, reading AS

23.10.060 in isolation one might think that the employment contract for a domestic servant would include the right to overtime compensation. But this is not the case because of a statutory exemption for employees in domestic service expressed in AS 23.10.055(a)(4).

44. *Gore*, 703 P.2d at 1166.

45. *Id.*

46. *See* 2A Norman J. Singer, Statutes and Statutory Construction § 46:06, at 181, 186–87 (6th ed. 2000) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another . . . .") (footnotes omitted).

47. *Selid Constr. Co. v. Guar. Ins. Co.*, 355 P.2d 389, 393 (Alaska 1960).

would be governed by the three-year statute of limitations for contracts, and AS 23.10.130—which explicitly limits actions for "unpaid overtime compensation" to two years—would be largely superfluous.

But not entirely superfluous. The superior court reasoned that special remedies in the AWHA—liquidated damages and full attorney's fees—would still be subject to the act's two-year limit even though unpaid overtime compensation is not. This rationale seems doubtful both as a matter of the statutory language and legislative intent. Section .130 expressly makes "[a]n action for ... unpaid overtime compensation, or liquidated damages under AS 23.10.050–23.10.150" subject to its two-year bar. Contract actions that include claims for unpaid overtime based on the incorporation clause of AS 23.10.060(c) are fairly described as "action[s] for ... unpaid overtime compensation ... under AS 23.10.050–23.10.150." Additionally, it is unlikely that the legislature intended the main claim—unpaid overtime—to be governed by a limitations period different from the limitations period for special remedies claims. These combined considerations persuade us that section .130 applies to Throop's incorporation-based overtime claim.

 This conclusion does not mean that all contract claims for unpaid overtime are subject to the two-year statute. Claims under contracts that call for overtime compensation in terms that reasonably can be interpreted as encompassing the statutory definition should fall within the contract limitations period. We discussed one such claim in *Quinn v. Alaska State Employees Ass'n.*[48] *Quinn* involved a claim for unpaid overtime.[49] The plaintiff's original suit only included statutory claims, not a contract claim.[50] But the *Quinn* court construed the complaint to include a breach of contract claim because the plaintiff had attached a copy of the collective bargaining contract to his motion for summary judgment.[51] Al-

though not stated in the opinion, the contract explicitly called for the payment of overtime at one and one-half times the rate of regular pay. The *Quinn* court held that the statute of limitations for contracts therefore applied to Quinn's overtime claim: "Thus, it is fair to construe Quinn's complaint as alleging a breach of the collective bargaining agreement, and to hold that the six-year statute of limitation for contracts applies."[52]

 Throop argues that his contract called for the payment of overtime in ambiguous terms and therefore the contract should be construed so that it is consistent with AWHA requirements. Air Logistics counters that the contract is not ambiguous because it clearly treats remote operations pay as separate from the hourly wage on which overtime will be calculated, and clearly specifies the number of hours that will be paid as overtime hours.

Air Logistics has the better of this argument. Throop's contract consists of Air Logistics's policy manual and Throop's letter of hire. The policy manual provides that: "For hours worked in excess of 8 hours per day or 40 hours straight time per week, overtime will be paid at 1 1/2 times the regular hourly rate." The policy manual states that all employees will be given a letter of hire that "will establish initial *rates of pay and initial assignments* as well as provide the basis for a more detailed explanation of Air Log's compensation policy." Throop's letter of hire stated that his base hourly wage was $21.05, a rate that excluded ROP which, in turn, was explicitly said to be a "separate pay" item. Likewise, the letter of hire stated that for each two-week shift Throop would be paid for ninety-six straight time hours and fifty overtime hours. Since Throop's contract of employment is clear rather than ambiguous, the rule of construction that ambiguous language in contracts will, where reasonably possible, be construed in accordance with legal requirements does not apply to it.[53]

---

48. 944 P.2d 468 (Alaska 1997).

49. *Id.* at 470.

50. *Id.*

51. *Id.* at 472.

52. *Id.*

53. *See* Restatement (Second) of Contracts § 203 (1979): "In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable: (a)

Throop also suggests that if the contract sets out an illegal definition of overtime, the court should simply substitute lawful terms in accordance with AWHA. In our view this argument does not substantially differ from the incorporation argument discussed and rejected above. If statutory terms are substituted their limitations should accompany them. In such case the action would fairly be considered one for "unpaid overtime compensation under ... AS 23.10.050–23.10.150" and would therefore be covered by the two-year statute of limitations prescribed by AS 23.10.130.

For the reasons expressed above, summary judgment should have been granted to Air Logistics on the contract claim.

## C. The Superior Court Did Not Abuse Its Discretion by Failing To Award Liquidated Damages.

Throop argues that the superior court erred by failing to award liquidated damages. An employer who violates the overtime or minimum wage provisions of the AWHA is usually liable for both unpaid overtime or minimum wage and an equal amount in liquidated damages.[54] Alaska Statute 23.10.110(d) provides an exception to this rule. It states that if the employer shows by clear and convincing evidence that it acted reasonably and in good faith the court may award no liquidated damages or a lesser amount of liquidated damages.[55] This provi-

sion contains both a subjective element—that the employer acted in good faith—and an objective element—that the employer reasonably believed it was not ·violating AWHA's overtime provision.

■■■■■ The question of whether an employer has shown good faith and reasonableness by clear and convincing evidence is a mixed question of law and fact.[56] Therefore, factual findings will be overturned only if they are clearly erroneous, but an application of the law to established facts will be reviewed de novo.[57] Once it is established that the superior court did not err in finding clear and convincing evidence of good faith and reasonableness, the superior court's decision regarding whether or not to award any level of liquidated damages is reviewed for abuse of discretion.[58]

The superior court noted that "the burden of proof on the employer is very high, and the excuse provision [in AS 23.10.110(d) is] rarely enacted." It also noted that "[t]he federal counterpart to AS 23.10.110(d) imposes a lighter burden of proof on an employer, and yet even under those lighter standards excuse from the strict application of the full liquidated damages provision is rare."

The superior court nonetheless found that Air Logistics met its burden of proving good faith by clear and convincing evidence. This decision was based on testimony that Air

an interpretation that gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation that leaves a part unreasonable, unlawful, or of no effect[.]"

54. AS 23.10.110(a).

55. AS 23.10.110(d) reads in full as follows:
 In an action under (a) of this section to recover unpaid overtime compensation or liquidated damages for unpaid overtime, if the defendant shows by clear and convincing evidence that the act or omission giving rise to the action was made in good faith and that the employer had reasonable grounds for believing that the act or omission was not in violation of AS 23.10.060, the court may decline to award liquidated damages or may award an amount of liquidated damages less than the amount set out in (a) of this section.

56. *See Bratt v. County of L.A.*, 912 F.2d 1066, 1071 (9th Cir.1990).

57. *See State v. Parker*, 147 P.3d 690, 694 (Alaska 2006); *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 884 (Alaska 2004); *Central Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002). The Ninth Circuit has noted that the determination regarding subjective good faith is generally factual and reviewed for clear error and the determination regarding objective reasonableness "involves applying the proper interpretation of the FLSA and supporting regulations to uncontested facts, a primarily legal determination," which should be reviewed de novo. *Bratt*, 912 F.2d at 1071–72; *see Fred Meyer*, 100 P.3d at 889 (reviewing the superior court's determination regarding good faith for clear error).

58. *See Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir.2000); *Bratt*, 912 F.2d at 1071.

Logistics presented its entire pay program to a supervisor in the DOL Wage and Hour Division, Monte Jordan, and "that after extensive discussions she saw no problem with their payment plan. All 'add-ons,' except the later instituted safety bonus, were part of the program presented to Jordan." The court found that all of Air Logistics's witnesses denied any motive to mislead and "testified that their purpose was to do things right, and avoid a law suit such as a competitor had had to deal with." The court also noted that Air Logistics met with Jordan to confirm that it was complying with the law and that if Jordan had identified a problem with any of the add-ons Air Logistics "would have simply modified its pay scheme to comply with the law, and likely maintain the same general, competitive wages. There was absolutely no evidence that the employer had any motive to conceal the nature of the 'add-ons' from Jordan."

With respect to the objective reasonableness of Air Logistics's belief that it was complying with the law, the court found that this was "confirmed by the differing opinions offered by knowledgeable Department of Labor employees":

> While an employer may well find it impossible to satisfy the good faith requirement without inquiring, once the employer establishes by testimony that it did make inquiries, and the Department of Labor stated it appeared its wage system met

Alaska law, and the Department of Labor has confirmed that conference meetings discussing the wage and hour requirements were held, the later conflicting opinions of the Department of Labor supports the claim by the employer that its belief was objectively reasonable.

While there is little applicable Alaska law on what constitutes good faith and objective reasonableness under the AWHA, there is a substantial body of federal law on this issue. The AWHA mandates that the employer provide clear and convincing evidence of good faith and objective reasonableness[59] whereas the FLSA requires an employer to show this "to the satisfaction of the court."[60] Federal law is helpful in providing general guidelines for what constitutes good faith and objective reasonableness.

Certain factors emerge that are repeatedly relied upon by the courts. For example, an employer who does not take affirmative steps to learn the law will not be able to show good faith and reasonableness.[61] This mirrors the only statutory guidance given on this topic in the AWHA.[62] Also, courts often examine whether the employer went to counsel for advice,[63] and some cases indicate that reliance on counsel alone can be sufficient to establish good faith and reasonableness.[64] Contacting the Department of Labor is also an important factor.[65] In *Bowrin v. Catholic Guardian Society*, for example, the court

---

**59.** AS 23.10.110(d).

**60.** 29 U.S.C. § 260 (2007). Federal courts have generally read this to require employees to bring forth plain and substantial evidence. *E.g., Bowrin v. Catholic Guardian Soc'y*, 417 F.Supp.2d 449, 471 (S.D.N.Y.2006); *Gilliam v. Montgomery Ward & Co.*, 912 F.Supp. 195, 197 (E.D.Va.1996); *Dalheim v. KDFW–TV*, 712 F.Supp. 533, 536 (N.D.Tex.1989).

**61.** *E.g., Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir.2004); *Gustafson v. Bell Atl. Corp.*, 171 F.Supp.2d 311, 326 (S.D.N.Y.2001); *Debejian v. Atl. Testing Labs., Ltd.*, 64 F.Supp.2d 85, 91 (N.D.N.Y.1999); *Pautlitz v. City of Naperville*, 874 F.Supp. 833, 835 (N.D.Ill.1994).

**62.** AS 23.10.110(g) ("Failure to inquire into Alaska law is not consistent with a claim of good faith under this subsection.").

**63.** *See, e.g., Lee v. Coahoma County*, 937 F.2d 220, 227 (5th Cir.1991); *Hill v. J.C. Penney Co.*,

688 F.2d 370, 375 (5th Cir.1982); *Pautlitz*, 874 F.Supp. at 835. Several courts have held, however, that employers who contact an attorney or agency generally about the law, but do not give specific factual information about their case will not meet the standard. *See, e.g., Kinney v. District of Columbia*, 994 F.2d 6, 12 (D.C.Cir.1993); *Bowrin*, 417 F.Supp.2d at 473; *Debejian*, 64 F.Supp.2d at 91; *Pautlitz*, 874 F.Supp. at 835; *Shelton v. Ervin*, 646 F.Supp. 1011, 1020 (M.D.Ga.1986).

**64.** *Martin v. David T. Saunders Constr. Co.*, 813 F.Supp. 893, 903 (D.Mass.1992); *see Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir.1990); *VanDyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir.1954).

**65.** *Lee*, 937 F.2d at 227; *see Garcia v. Allsup's Convenience Stores, Inc.*, 167 F.Supp.2d 1308, 1316 (D.N.M.2001).

noted that "courts may find that an employer acted in good faith where it relied on representations made by the DOL." [66]

Several courts have noted that the fact that an employer's decisions are " 'above board and justified in public' may satisfy the good faith and reasonableness test." [67] One court described why this factor is relevant:

An employer's willingness to state and defend a ground suggests a colorable foundation, and openness facilitates challenges by the employees. Double damages are designed in part to compensate for concealed violations, which may escape scrutiny. An increase in damages when concealable violations are detected and corrected presents employers with the full costs of their actions, a point stressed in the legislative history of the double-damages provision, which grew out of concern that violations would be concealed and employees undercompensated.[68]

Finally, many federal courts have noted that the closeness of the legal question bears on the issue of objective reasonableness.[69] As one court noted, "where ... there is no clear-cut violation of the applicable regulations, or the regulations themselves are not specific, an interpretation that is found by the court to be incorrect can still be said to be reasonable." [70]

■ The superior court's factual findings as to subjective good faith are well supported by the record and do not constitute clear error. According to the testimony of Air Logistics management, the pay plan was created in 1990 in response to a ruling issued to another helicopter company by the DOL that found that helicopter mechanics were not exempt from AWHA. Prior to this ruling Air Logistics's mechanics received a salary. Air Logistics tried to create an hourly wage that approximated the same salary. According to testimony, management took the entire proposed pay plan to the DOL to ensure compliance with applicable laws. After at least two—and probably more—meetings and phone calls, a DOL supervisor approved the plan. Air Logistics also showed its plan to its lawyer. There was much testimony that Air Logistics had no incentive to conceal anything and was trying to comply with the law.[71] Once it had finalized the new pay plan, it provided employees with detailed information about the plan. Given this testimony, the superior court's finding that Air Logistics provided clear and convincing evidence of subjective good faith is not clear error.

■ The superior court's holding that there was clear and convincing evidence of objective reasonableness is similarly not erroneous based on the facts related in the preceding paragraph. Further, this case dealt with close legal questions concerning technical aspects of calculating overtime pay. The question of whether or not ROP should have been included was especially close, as it appears that there was not even consensus among high-level DOL staff as to this issue.[72] While it might have been somewhat easier to

---

**66.** 417 F.Supp.2d at 473.

**67.** *Bernard v. IBP, Inc.*, 154 F.3d 259, 267 n. 35 (5th Cir.1998) (quoting *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir.1981)); *Bratt v. County of L.A.*, 912 F.2d 1066, 1072 (9th Cir. 1990); *Herman v. Hogar Praderas de Amor, Inc.*, 130 F.Supp.2d 257, 267 (D.P.R.2001); *Tefft v. State*, 271 Mont. 82, 894 P.2d 317, 324 (1995).

**68.** *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir.1986).

**69.** *Kinney*, 994 F.2d at 12; *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 918 (8th Cir.1991); *Bratt*, 912 F.2d at 1072; *Gilliam*, 912 F.Supp. at 199; *Bond v. City of Jackson*, 727 F.Supp. 1516, 1519 (S.D.Miss.1989); *Dalheim*, 712 F.Supp. at 540.

**70.** *Berry v. Sonoma County*, 791 F.Supp. 1395, 1416 (N.D.Cal.1992), *rev'd on other grounds, Berry v. County of Sonoma*, 30 F.3d 1174 (9th Cir. 1994).

**71.** The testimony that it had no incentive to conceal anything is convincing because if the DOL had expressed concerns about the add-ons Air Logistics could have merely included them in the regular rate when calculating overtime and slightly reduced the base rate to achieve the same overall salary level. In light of this there is no obvious motive it might have had to conceal any information.

**72.** Throop strongly objects to the admission of expert testimony of one of the DOL officials, Randy Carr. When Carr testified about the ROP he was testifying as a fact witness and merely putting forth the fact that he continued to maintain his opinion with all of the facts in front of him. This goes to the objective reasonableness

determine that the other four add-ons should have been included in the regular rate, that would have required a sophisticated analysis of a technical wage and hour issue that seems not to have occurred to the DOL supervisor when she originally reviewed the plan. Finally, the analysis of whether the on-call hours were compensable under the AWHA was a close question that required a deep understanding of wage and hour case law. The closeness of the legal issues indicates that the overtime errors would not have been obvious to Air Logistics from the beginning.

The only factor weighing against Air Logistics with respect to the objective reasonableness factor is the fact that it did not get a written determination from the DOL. Throop heavily emphasizes the failure to obtain confirmation in writing from the DOL, relying on *Armitage v. City of Emporia*[73] and *Renfro v. City of Emporia.*[74] In *Armitage,* the court stated:

> The sole evidence of reasonableness offered by the City is the testimony of Chief Blemenkamp that he called the Department of Labor seeking approval of the pay plans. If the City would have obtained confirmation from the Department of Labor, there would be no lawsuit since the City could not be held liable. In addition, the City was aware of its mistakes due to the pending litigation instituted by the City's firefighters. Thus, the City's failure to obtain written approval of its pay plans overshadows any claim of reasonableness.[75]

Similarly, in *Renfro* "the record reflected [the] City's only attempt to determine if they were in compliance with the FLSA was a phone-call made to a 'Mrs. Spivey' at the DOL by Carol King, an administrative assistant for [the] City." [76] The court found this to be inadequate since King could not recall

Spivey's position with the DOL or in what detail she described the policy and since the city never requested a written opinion.[77] The factual circumstances in the case at hand are different. Air Logistics did not just make a telephone call to the DOL but rather met with department representatives on at least two occasions, received approval of its pay plan, and consulted with an attorney. There was no pending litigation, so Air Logistics was not aware of any possible violations. Additionally, Jordan confirmed that the meetings occurred and stated that most of her responses to questions by employers were verbal, and verbal approval of a pay plan would not have been unusual.

Air Logistics initiated interactions with a supervisory level DOL employee, provided her with a detailed pay plan, received her approval of the plan, consulted with its attorney regarding the issue, was open with its employees about how they were being paid, and lacked intent to conceal or mislead the DOL or its employees. Given these circumstances and the closeness of the legal questions involved, the superior court did not err in finding clear and convincing evidence of objective reasonableness.

Since we uphold the superior court's holding that Air Logistics showed clear and convincing evidence of good faith and reasonableness, we review for abuse of discretion the superior court's decision not to award liquidated damages. Given the persuasive evidence showing that Air Logistics acted in good faith, we find that the superior court did not abuse its discretion by declining to award liquidated damages.

**D. The Superior Court Did Not Abuse Its Discretion with Respect to Most of the Attorney's Fees Award.**

Since this opinion reverses the superior court's holdings regarding the contract claim,

---

of Air Logistics's position. He was not testifying as an expert as to the underlying question of whether the ROP should have been included in the regular rate. As to any other expert testimony, we review the question of objective reasonableness de novo, and the superior court's holding can easily be upheld without relying on Carr's expert testimony.

**73.** 782 F.Supp. 537 (D.Kan.1992), *rev'd, Armitage v. City of Emporia,* 982 F.2d 430 (10th Cir.1992).

**74.** 948 F.2d 1529 (10th Cir.1991).

**75.** 782 F.Supp. at 546 (citation omitted).

**76.** 948 F.2d at 1541.

**77.** *Id.*

the superior court should recalculate attorney's fees accordingly. However, it is appropriate to address several specific claims regarding attorney's fees.

Throop requested full attorney's fees for work associated with class certification, notice, and representation ($32,000), full fees for work related to a sanction against Air Logistics for improperly contacting class members ($13,000), and 85%—95% of the "value of class counsel's fees," which it stated was $309,320. Thus Throop requested over $300,000 in attorney's fees for a judgment that totaled a little over $100,000 including interest and the "catch-up payments." The superior court, relying on the "contested with trial" fee schedule set out in Civil Rule 82(b)(1),[78] awarded Throop $9,660.42 in attorney's fees plus $6,660.00 for fees related to the issue of improper contact.

■ Throop argues on appeal that the superior court did not follow our case law concerning how to calculate Rule 82 fees in class actions. This court has set out a two-step method that trial courts may use when determining Rule 82 awards in class actions: "(1) determine the compensable value of the services the attorneys rendered to the class, and (2) apply Rule 82 to the amount calculated in Step 1 to decide how much [the losing party] should pay."[79] However, this analysis is not mandatory,[80] and the superior court did not abuse its discretion by declining to apply it here.

■ Throop also argues that the superior court erred by disregarding Air Logistics's catch-up payments as part of the recovery.

Throop is correct. After Throop filed his complaint Air Logistics contacted the DOL to get its opinion regarding the add-ons. The DOL found that four of the add-ons should be included in the regular rate of pay. Air Logistics then made two payments to its employees for those add-ons totaling $6,527.55. The payments only covered the difference in overtime for hours recorded as actually worked. After the superior court granted summary judgment on the question of whether the ROP add-on should be included in the regular rate, and after receiving a second opinion from the DOL to the same effect, Air Logistics made a second payment totaling $20,842.83. This represented the overtime differential for ROP for all hours recorded as actually worked. These payments were deducted from the final judgment, and the superior court did not include them as part of the money judgment when it awarded attorney's fees. Since they were made as a result of the litigation, the fact that Air Logistics made them early should not shield them from Rule 82.[81]

■ Throop argues that the superior court should have awarded "full fees for all work reasonably incurred both in obtaining class certification and for issues relating to class representation," totaling $32,000. His argument relies on *Monzingo v. Alaska Air Group, Inc.*, in which this court found that attorney's fees for class certification issues may not be awarded against a non-prevailing plaintiff.[82] He does not cite any case directly supporting the proposition that a plaintiff must receive full attorney's fees for class

---

78. In general, successful plaintiffs are awarded full, reasonable attorney's fees under the AWHA. AS 23.10.110(c). The exception is when, as here, a defendant who violated the overtime provisions shows good faith and reasonableness by clear and convincing evidence. AS 23.10.110(e). Once that occurs, AWHA directs the court to calculate attorney's fees using Rule 82. AS 23.10.110(e)(1).

79. *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 263 (Alaska 1996).

80. *See, e.g., Int'l Seafoods of Alaska, Inc. v. Bissonette*, 146 P.3d 561, 565–66, 573 (Alaska 2006) (upholding an attorney's fee award in a class action where the trial court awarded the prevailing party a percentage of the award under Civil Rule 82(b)(1) subject to adjustments under Civil Rule 82(b)(3)).

81. The damages in this case were not awarded as a result of a trial. The payments for the four add-ons for hours worked were not contested and attorney's fees should be calculated accordingly. The payments for the ROP and compensable hours were contested but resolved on summary judgment. Since the contested damages were awarded as a result of summary judgment, the superior court also appears to have erred in applying the "contested with trial" fee schedule to the rest of the damages rather than the "contested without trial" schedule.

82. 112 P.3d 655, 668 (Alaska 2005).

certification issues. The superior court did not abuse its discretion in denying this request.

Throop also argues that the superior court erred in "disregarding the uncontested evidence that all but $42,000 of class counsel's work was expended on the class recovery from [Air Logistics] for illegally unpaid overtime." The superior court emphasized that prior to trial damages were stipulated under the summary judgment rulings and the trial was only on the issue of injunctive relief and liquidated damages. Air Logistics prevailed on these issues. It noted that "the liquidated damages are tied to the underlying wage claims. It is virtually impossible to segregate attorney time related to the liquidated damages claims from the underlying wage issue." The superior court then found that, "[o]n these facts, it would be unreasonable and unfair to award enhanced and full fees of $300,000 to the plaintiff when the bulk of those efforts were unproductive." The trial court did not abuse its discretion in these findings.

## IV. CONCLUSION

All of the employees' pay hours were compensable hours for the purposes of the AWHA. Therefore we AFFIRM the superior court's grant of summary judgment on the issue of hours worked. Since the two-year AWHA statute of limitations for the contract overtime claim applies, summary judgment should have been granted to Air Logistics on that claim. Therefore we REVERSE the superior court's grant of summary judgment to Throop on the contract claim.

We AFFIRM the superior court's findings as to liquidated damages on the basis that Air Logistics provided clear and convincing evidence of good faith and reasonableness. We REMAND for a recalculation of attorney's fees consistent with this opinion.

BRYNER, Justice, not participating.