**FRED MEYER OF ALASKA, INC.,**
Appellant/Cross–Appellee,

v.

**Ron BAILEY, Appellee/Cross–Appellant.**

Nos. S–10958, S–10968.

Supreme Court of Alaska.

Nov. 5, 2004.

Peter Gruenstein, Gruenstein & Hickey, Anchorage, and James R. Dickens, Miller Nash LLP, Seattle, Washington, for Appellant/Cross–Appellee.

John E. Casperson, Holmes, Weddle & Barcott, Anchorage, for Appellee/Cross–Appellant.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal arises out of Fred Meyer's classification of manager Ron Bailey as an exempt employee and therefore ineligible for overtime pay under the Alaska Wage and Hour Act (AWHA). Bailey opted out of a class action for overtime pay because of a threat by his store manager. Within two years of being told by a different manager that participation in a court action would not jeopardize his job, Bailey filed a lawsuit claiming overtime compensation. Fred Meyer appeals the superior court's finding that Bailey was not exempt, as well as the superior court's allowance of claims not within the statute of limitations. It also challenges the superior court's admission of an expert report and its finding that Fred Meyer did not show by clear and convincing evidence that it acted in good faith. Bailey appeals the superior court's failure to award prejudgment interest. Because the superior court did not err when it found that Bailey was not exempt, we affirm that ruling. We also conclude that the superior court did not err in

its determination that Fred Meyer failed to show by clear and convincing evidence that it acted in good faith. Because Bailey claims that he was not notified of the entry of judgment, we remand so that he may be provided an opportunity to submit his calculation of prejudgment interest and his cost bill.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Ron Bailey began working at the Anchorage Fred Meyer on Dimond in June 1985. He was transferred to the home electronics department in late 1985 and remained in home electronics until he left Fred Meyer in 1997. Bailey was promoted to manager of the department in August 1989 and was transferred to the Fred Meyer in Juneau in March 1990 as the manager of the home electronics department. Although Bailey received a weekly salary with bonuses, he did not receive any overtime compensation. In May 1996 Bailey transferred to the Anchorage Fred Meyer on Northern Lights.

In May 1991, while Bailey was working at the Juneau store, a class action complaint in a suit entitled *Adams v. Fred Meyer* claiming overtime violations under the Alaska Wage and Hour Act was filed against Fred Meyer.[1] The manager of the Juneau store, Keith Flynn, told all department managers that if they stayed in the lawsuit, they would not be promoted. All of the managers, including Bailey, excluded themselves from the class. Bailey signed his request for exclusion in May 1996. After Bailey moved to the Northern Lights store, his new store manager, Nancy Carey, contradicted Flynn and assured Bailey that there would be no retaliation if he participated in the class action.

### B. Procedural History

Bailey filed this lawsuit against Fred Meyer on April 15, 1998. Fred Meyer moved to exclude as time barred evidence of overtime claims prior to April 15, 1996. The superior court denied Fred Meyer's motion.

A bench trial took place on October 23 and 24, 2000, and Superior Court Judge Dan A.

Hensley issued his oral decision on November 22, 2000. The superior court determined that Bailey was not an exempt employee and was thus entitled to overtime compensation. Fred Meyer sought amendment of the judgment and reconsideration, arguing that the superior court incorrectly tolled Bailey's claim and erroneously found that Bailey was not exempt. The superior court denied Fred Meyer's motion.

The parties filed supplemental pleadings on two issues: the regular hourly rate applicable to Bailey and Fred Meyer's good faith defense. Fred Meyer objected to the trial court receiving a report that was prepared by a defense expert in *Adams* and appended to Bailey's supplemental pleading, but the trial court considered the defense expert's advice to Fred Meyer that the home electronics managers should not be considered exempt. In its supplemental filing, Fred Meyer also addressed the issue of prejudgment interest, although the court had not directed the parties to do so. The court limited Bailey's award of prejudgment interest under AS 09.30.070(b) and although Bailey sought reconsideration on this issue, this relief was denied.

On December 22, 2002, the trial court entered final judgment for Bailey in the amount of $254,056.34, half of this being liquidated damages, and awarded him $70,087.50 in attorney's fees. It also gave Bailey fifteen days to submit his proposed calculation of prejudgment interest. Bailey's counsel claims that he did not receive a copy of the judgment and did not learn of it until he received Fred Meyer's notice of appeal. Although Bailey promptly moved to file a late calculation of prejudgment interest, the superior court did not act on Bailey's motion and Bailey cross-appeals on this issue.

## III. DISCUSSION

### A. Standards of Review

 We set aside a lower court's factual findings only when they are clearly errone-

---

1. Alaska Superior Court Case No. 3AN–90–10286 Civil.

ous.[2] We determine that factual findings are clearly erroneous when, after a review of the record as a whole, we are "left with a definite and firm conviction that a mistake has been made."[3] In a mixed question of law and fact, we review the legal question separately, applying our independent judgment to adopt the legal rule that is most persuasive in light of precedent, reason, and policy.[4]

## B. The Superior Court Did Not Err when It Found that Bailey Was Not Exempt.

■ Fred Meyer appeals the superior court's finding that Bailey was not an executive employee who was exempt from payment of overtime under the AWHA. Fred Meyer relies principally on the argument that Bailey's tasks were "directly and closely related" to management duties.[5]

■ Under the AWHA, employees who work more than eight hours in a day or forty hours in a week are entitled to overtime pay[6] unless an exemption applies.[7] One of the exemptions excludes "an individual employed in a bona fide executive, administrative, or professional capacity."[8] The Alaska Administrative Code defines an exempt executive employee[9] and considers the amount of time that such an employee can spend on nonmanagerial tasks. An exempt executive employee in a retail establishment is one "who does not devote more than 40 percent of the em-

ployee's weekly hours to activities that are not directly and closely related to the work described in this paragraph."[10] The burden is on the employer to prove beyond a reasonable doubt that the employee is exempt.[11] And we have determined that "[e]xemptions are to be narrowly construed against the employer."[12]

Neither the AWHA nor the Alaska Administrative Code defines the term "directly or closely related," but the definitions section of the AWHA does provide that any terms not defined in the AWHA or in the regulations "shall be defined as they are defined in the federal Fair Labor Standards Act of 1938, as amended, or the regulations adopted under it."[13] The Code of Federal Regulations describes and illustrates the phrase "work directly or closely related."[14] 29 C.F.R. § 541.108(e) provides that certain activities on the sales floor are not closely related to management work, except when they are done to train or demonstrate. A supervisor's "actual participation, except for supervisory training or demonstration purposes, in such activities as making sales to customers, replenishing stocks of merchandise on the sales floor, removing merchandise from fitting rooms and returning to stock or shelves, however, is not [directly and closely related to managerial and supervisory functions]."[15]

The federal regulations note that "it is one of the objectives of [the regulation] to ex-

2. *Bennett v. Bennett,* 6 P.3d 724, 726 (Alaska 2000).

3. *Id.* (citation and internal quotations omitted).

4. *Wyller v. Madsen,* 69 P.3d 482, 485 (Alaska 2003).

5. *See Am. Rest. Group v. Clark,* 889 P.2d 595, 597 (Alaska 1995).

6. AS 23.10.060.

7. AS 23.10.055.

8. AS 23.10.055(9).

9. 8 AAC 15.910(7).

10. 8 AAC 15.910(7)(E). The paragraph describes duties such as: management of the enterprise or a branch thereof (8 AAC 15.910(7)(A)); directing the work of two or more employees (8 AAC 15.910(7)(B)); the authority to hire and fire em-

ployees (8 AAC 15.910(7)(C)); and the exercise of discretionary authority (8 AAC 15.910(7)(D)).

11. *Dayhoff v. Temsco Helicopters, Inc.,* 848 P.2d 1367, 1371–72 (Alaska 1993). Contrary to the explicit language in *Dayhoff,* Fred Meyer argues that the AWHA requires proof only by a preponderance of the evidence.

12. *Id.* at 1372 (citation and internal quotations omitted).

13. AS 23.10.145; *see Whitesides v. U–Haul Co. of Alaska,* 16 P.3d 729, 732 (Alaska 2001) (noting that AWHA "provides that terms not defined in the AWHA or in regulations adopted under it shall be defined as they are defined in the FLSA or the regulations adopted under it").

14. 29 C.F.R. § 541.108.

15. 29 C.F.R. § 541.108(e).

clude from the definition [of 'executive'] foremen who hold 'dual' or combination jobs,"[16] distinguishing "production work" from true managerial functions.[17] Tasks such as recordkeeping, setup work, inspecting, examining, and observing actually may be "production work" when they "take up a large part of the employee's time" and are not "a function directly and closely related to the supervisory or managerial duties," making the employee "a combination foreman—'setup' man, ... floorman-salesperson, ... rather than a bona fide executive."[18]

The question before the trial court in this case was whether Bailey devoted more than forty percent of his time to work that was not directly and closely related to management work.[19] In its oral findings, the superior court explained that because "directly or closely related" is not defined in Alaska law, it looked to "federal law as guidance." The superior court, citing 29 C.F.R. § 541.108(g), accurately characterized the test to be applied:

> [The] federal regulations explain that a working supervisor in a large retail establishment who actually participates in sales, stocking and those kind of floor activities, that those kind of floor activities are not "closely related to managerial functions" as distinguished from a working supervisor who observes his employees on the floor, spot checks in order to evaluate the employees' conduct.

In its oral findings, the superior court focused on testimony by Fred Meyer's employees that it is important to "have a supervisor on the floor to provide service to the customers, ... to act as a role model so that other sales personnel do a good job and ... so that customers can ask the manager questions" and that Bailey's "strongest point as ... a manager, was his customer service skills." The superior court found that Bailey "worked substantially more than 40 percent of his time" and actually "approached 60

percent" performing nonmanagement tasks, making it "clear that Mr. Bailey is not exempt." And while the superior court acknowledged that Bailey's floor activities provided a model to his employees, it concluded that Bailey was performing dual roles; thus, pursuant to the federal regulations, Bailey was not exempt.

Fred Meyer relies on our decision in *American Restaurant Group v. Clark* to argue that the superior court failed to "consider the nature of the employer's business and the role of management in the particular business" when evaluating how much time Bailey spent on nonmanagerial work.[20] In *American Restaurant Group,* we reversed summary judgment against the employer because there was a factual issue as to how much time the employees spent performing tasks that were not directly or closely related to their executive duties.[21] We announced that the question whether the employees' activities were closely and directly related to their management duties is a factual question.[22] Here, the superior court conducted a trial, hearing testimony from Bailey and both of his supervisors, Keith Flynn and Nancy Carey. It heard substantial testimony that Bailey spent much of his time doing nonmanagerial work, and it made an express finding that "Mr. Bailey's actual time on the floor doing sales, restocking and similar work approached 60 percent." Because the superior court applied the correct law to the facts and because its factual finding was not clearly erroneous, we conclude that the superior court did not err when it found that Bailey was not an exempt executive employee.

## C. The Superior Court Did Not Err by Permitting Bailey To Recover for All of His Overtime Hours.

■ Fred Meyer argues that Bailey should only have been permitted to recover for those overtime claims arising during or after the April 15, 1996 pay period. Fred

---

16. 29 C.F.R. § 541.108(g).

17. *Id.*

18. *Id.*

19. 8 AAC 15.910(7)(E).

20. 889 P.2d 595, 599 (Alaska 1995).

21. *Id.* at 597.

22. *Id.* at 598–99.

Meyer relies on the statute of limitations, arguing that the two-year limitation period[23] bars any of Bailey's overtime claims that arose more than two years prior to Bailey's April 15, 1998 filing. Thus, it contends the superior court erred by considering Bailey's pre–1996 claims. But Bailey presented evidence, and the superior court found, that Bailey opted out of the class action covering his pre–1996 claims because of the threat of retaliation by Bailey's store manager, Keith Flynn. The superior court further found that in May 1996, when his new store manager assured him that there would be no retaliation for participation in the class action, Bailey no longer had a reasonable basis to be concerned about the threat and the court concluded that the statute of limitations began to run in May 1996. Bailey brought his case in April 1998. The superior court determined that Bailey had the full statutory period to file once the threat was removed.

Fred Meyer contends that the superior court improperly applied the doctrine of equitable tolling to Bailey's situation, arguing that equitable estoppel is the appropriate equitable remedy. Bailey responds that the superior court's decision may be sustained under equitable tolling principles.

As we evaluate Bailey's situation, we take note of the general principles relating to the statute of limitations defense. In *Fred Meyer v. Adams,* we observed that we "look upon the defense of statute of limitations with disfavor and will strain neither the law nor the facts in its aid."[24] In *Adams,* we also described the purposes of limitations periods: to "provide defendants with notice of the nature of adverse claims" and to "bar plaintiffs who have slept on their rights."[25]

 The doctrine of equitable tolling "relieve[s] a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him"[26] so that after the plaintiff "adopts a single course of action which is dismissed or otherwise fails, courts generally allow the plaintiff to pursue a second remedy based on the same right or claim."[27] The statute of limitations is thus tolled during the pendency of the initial defective action, giving the plaintiff the full statutory period to file once tolling ceases.[28] In such circumstances, the statute is equitably tolled if "(1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith."[29]

 In Bailey's case the superior court found that Fred Meyer, through its coercive conduct, forced Bailey out of the existing class action. Generally, equitable tolling applies when the plaintiff files an action in court after an administrative proceeding or initial court action is dismissed or proves unavailing.[30] But this principle applies to Bailey's situation as well. The class action was Bailey's initial remedy: Once Bailey was forced to opt out of the class action, this initial remedy proved unavailing. As the superior court found, "the threat existed and Mr. Bailey's failure to file a lawsuit was reasonable." The statute of limitations began to run when the threat abated in May

23. AS 23.10.130 provides:

An action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under AS 23.10.050–23.10.150 is forever barred unless it is started within two years after the cause of action accrues. For the purposes of this section an action is considered to be started on the date when the complaint is filed.

24. 963 P.2d 1025, 1027 n. 6 (Alaska 1998).

25. *Id.* at 1028.

26. *Dayhoff v. Temsco Helicopters, Inc.,* 772 P.2d 1085, 1087 (Alaska 1989) (citing *Gudenau & Co.*

*v. Sweeney Ins.,* 736 P.2d 763, 768 (Alaska 1987)).

27. *Gudenau,* 736 P.2d at 768.

28. *Id.*

29. *Dayhoff,* 772 P.2d at 1087.

30. *E.g., id.* at 1087–88 (determining that Department of Labor proceedings are alternative administrative remedy that may toll statute of limitations); *Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327, 1331–33 (1985) (superseded by statute, *see Jepson v. New,* 164 Ariz. 265, 792 P.2d 728 (1990)); *Addison v. State of California,* 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941, 943

1996 and Bailey was free to pursue his second legal remedy, an individual action. Because of Fred Meyer's coercive conduct, Bailey was foreclosed from participating in the initial remedy available to him; he only later discovered that he could pursue an individual claim against Fred Meyer without fear of retaliation. Thus, under equitable tolling principles, Bailey had the full statutory period to file his claim.

The three additional requirements for equitable tolling—notice to the defendant of the plaintiff's claim, lack of prejudice to the defendant, and reasonable, good faith conduct on the part of the plaintiff—are satisfied here. Bailey's initial inclusion in the class claiming unpaid overtime provided Fred Meyer with notice of Bailey's legal claim.[31] For the same reason, equitable tolling's second requirement, that the defendant's ability to gather evidence not be prejudiced by the delay,[32] is satisfied. Fred Meyer's defense of the class action provided ample opportunity to gather evidence on the issue of unpaid overtime for electronics managers, and there is nothing to indicate that it could not furnish evidence on Bailey's specific claim for unpaid overtime hours. Tolling also requires that the plaintiff act reasonably and in good faith.[33] This third element, too, is satisfied: Bailey filed his individual suit within the two-year limitations period after the disability abated. And in *Dayhoff v. Temsco Helicopters*, we concluded that "an employee is entitled to the benefit of the full statutory period after the circumstances which justify equitable tolling abate," rejecting the defendant's claim that the plaintiffs failed to exercise due diligence as a matter of law because they

failed to file suit immediately after the initial remedy proved unavailing.[34] Accordingly, we affirm the superior court's finding that Bailey can recover for all of his overtime hours.

**D. The Superior Court Did Not Err in Finding that Fred Meyer's Classification of Bailey as Exempt Was Not in Good Faith.**

■ Fred Meyer also appeals the superior court's finding that Fred Meyer failed to produce clear and convincing evidence that it acted in good faith when it classified Bailey as an exempt employee, resulting in Fred Meyer's liability for liquidated damages and reasonable attorney's fees. Fred Meyer contends that it met its burden of demonstrating good faith by clear and convincing evidence through testimony from former senior vice president for human resources, Keith W. Lovett, as well as evidence of Fred Meyer's prompt evaluation of remaining salaried positions. And Fred Meyer challenges the superior court's admission of and reliance on a report prepared by defense counsel's expert in the earlier *Adams* overtime case against Fred Meyer which concluded that photo electronics managerial positions should not be classified as exempt.

Alaska Statute 23.10.110(d) gives discretion to the court to decline to award liquidated damages if the defendant shows by clear and convincing evidence that the defendant acted in good faith.[35] In cases where the plaintiff prevails, AS 23.10.110(e) mandates that the court award attorney's fees unless the defendant shows by clear and convincing evidence that the defendant acted in good faith.[36]

(1978); *Collier v. City of Pasadena*, 142 Cal. App.3d 917, 191 Cal.Rptr. 681, 684–85 (1983).

31. *Cf. Gudenau*, 736 P.2d at 768.

32. *Id.*

33. *Id.*

34. *Dayhoff*, 772 P.2d at 1088 n. 6.

35. Alaska Statute 23.10.110(d) provides:
In an action under (a) of this section to recover unpaid overtime compensation or liquidated damages for unpaid overtime, if the defendant shows by clear and convincing evidence that the act or omission giving rise to the action

was made in good faith and that the employer had reasonable grounds for believing that the act or omission was not in violation of AS 23.10.060, the court may decline to award liquidated damages or may award an amount of liquidated damages less than the amount set out in (a) of this section.

36. Alaska Statute 23.10.110(e) provides in relevant part:
If the plaintiff prevails in an action for unpaid overtime compensation under (a) of this section, the court shall award reasonable attorney fees to the plaintiff unless the defendant shows by clear and convincing evidence that the act or omission giving rise to the action was made

In its findings rejecting Fred Meyer's claim of good faith, the superior court recognized Fred Meyer's argument that it had reviewed its pay structures in order to comply with the AWHA and its submission of a January 6, 1997 memorandum describing the changes undertaken in an effort to comply with the statute. But the superior court relied on the opinion of Stan Owings, Fred Meyer's own expert in *Adams*, who informed Fred Meyer in 1995 that the position of photo electronics manager should not be classified as exempt. The superior court concluded that Fred Meyer ignored Owings's determination.

■ Fred Meyer contends that the superior court erred in admitting an expert report by Owings that was prepared for defense counsel in *Adams*. Specifically, the report described Owings's review of Fred Meyer's various department manager positions and concluded that while most of the positions were properly classified as exempt under the AWHA, the photo electronics manager did not meet the AWHA requirements for exempt status because the photo electronics manager spent more than forty percent of his or her time on "non-exempt job duties." In *Adams*, Owings testified for Fred Meyer after being deposed and having his report produced. In this case, Owings was not listed as an expert witness for Fred Meyer; instead, he was included in Bailey's amended list of lay witnesses. Although Owings did not testify at Bailey's trial on the question of whether Bailey was exempt, in the post-trial proceedings Bailey submitted an affidavit from Owings, as well as Owings's *Adams* report, in support of Bailey's contention that Fred Meyer did not act in good faith.

Fred Meyer argues that Alaska Civil Rule 26(b)(4)(B),[37] the rule limiting access to non-testifying experts except upon a showing of exceptional circumstances, should have prevented Bailey's use of Owings's report. Fred Meyer claims that because Bailey did not show exceptional circumstances to justify access to Owings's report, the report was improperly admitted. But as Bailey correctly notes, Civil Rule 26(b)(4)(B) does not apply because Owings was not an expert witness for either Fred Meyer or Bailey; instead, his report was used to demonstrate that Fred Meyer was notified that Bailey's position should not be classified as exempt and failed to take corrective action.

Fred Meyer also contends that as a lay witness, Owings possessed limited personal knowledge of the facts surrounding managerial duties. But Owings's report was not offered to support Bailey's contention that he was not an exempt manager; it was offered solely to demonstrate Fred Meyer's state of mind and to show Fred Meyer's lack of good faith and lack of reasonable efforts to comply with Alaska law. Fred Meyer also argues that the report should have been excluded as hearsay under Alaska Rule of Evidence 802.[38] But Bailey did not offer the report for the truth of the matters stated;[39] rather he offered it to show that Fred Meyer had notice of its potential violations of Alaska law.

Fred Meyer also points to the declaration of Keith W. Lovett which described the actions that Fred Meyer took during and after the *Adams* litigation. But the court found that Lovett "offered differing recollections of the company's efforts to comply with the AWHA"; Lovett testified that he reviewed the salaried positions around January 1997

in good faith and that the defendant had reasonable grounds for believing that the act or omission was not in violation of AS 23.10.060. . . .

**37.** Civil Rule 26(b)(4)(B) provides in relevant part:

A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a

showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

**38.** Alaska Rule of Evidence 802 states: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Alaska Supreme Court, or by enactment of the Alaska Legislature."

**39.** Alaska Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing,

but in a 1997 deposition Lovett testified that, to his knowledge, the company had never hired a consultant or studied whether the company was complying with Alaska law. The court concluded that the contradictory testimony did not amount to clear and convincing evidence of Fred Meyer's good faith.

In finding that Fred Meyer did not act in good faith, the superior court properly relied on Owings's report and found that Fred Meyer's primary witness, Lovett, was not credible. We affirm the superior court's award of attorney's fees and liquidated damages because the superior court's determination that Fred Meyer failed to produce clear and convincing evidence of good faith was not clearly erroneous.

### E. Bailey Should Be Permitted To Seek Prejudgment Interest and Costs.

Bailey argues that he is entitled to prejudgment interest and costs even though he did not file for either within the permissible time.[40] Bailey claims that his untimely filing resulted from the fact that he never received the superior court's final judgment.[41]

Fred Meyer argues that a motion to alter or amend a judgment must be made in a timely fashion, after which the judgment cannot be disturbed.[42] While the general rule is certainly to leave final judgments undisturbed, in this case Bailey apparently had no opportunity to comply with the court's request for submission of interest or with Rule 79's allowance for submission of a cost bill

and moved for relief upon receiving the judgment. If the superior court finds this to be the case, it is appropriate to permit Bailey to file his prejudgment interest and costs.[43]

Because Bailey claims that his motion for reconsideration was not untimely and because Bailey was previously denied an opportunity to brief the issue, we remand so that the superior court can consider whether Bailey was, in fact, improperly denied the opportunity to comply with the court's requested submission and with Civil Rule 79, and can then choose the correct date for interest to begin to accrue based on briefing by both parties.

## IV. CONCLUSION

Because the superior court did not err when it found that Bailey was exempt or when it permitted Bailey to recover for all of his overtime claims, we AFFIRM the determinations. Because the superior court's finding that Fred Meyer had not shown by clear and convincing evidence that it acted in good faith was not clearly erroneous, we AFFIRM the finding. Because Bailey claims he was not notified of the entry of judgment and the need to file prejudgment interest calculations and his cost bill, we REMAND for the superior court to determine whether Bailey should be provided with an opportunity to seek such costs.

offered in evidence to prove the truth of the matter asserted."

40. The trial court provided fifteen days for Bailey to submit the prejudgment interest calculation and Civil Rule 79 gives counsel ten days to seek costs. Rule 79(b) provides in part:
 To recover costs, the prevailing party must file and serve an itemized and verified cost bill, showing the date costs were incurred, within 10 days after the date shown in the clerk's certificate of distribution on the judgment. Failure of a party to file and serve a cost bill within 10 days, or such additional time as the court may allow, will be construed as a waiver of the party's right to recover costs.

41. The superior court's inaction on this issue may have been because it thought that it had no jurisdiction to consider the issue once it was up on appeal.

42. Fred Meyer cites to several rules in support of its contention: Civil Rule 52(b) provides that a motion to amend may be "made not later than 10 days after the date shown in the clerk's certificate of distribution on the judgment." Civil Rule 59(f) says that a "motion to alter or amend the judgment shall be served not later than 10 days after the entry of the judgment." Civil Rule 58.1(c)(3) makes the date of notice of judgment "the date shown in the clerk's certificate of distribution of the written judgment."

43. Because we are remanding for consideration of prejudgment interest and because the parties never had an opportunity to present formal briefing on that topic, the trial court will need to consider two related issues: the proper prejudgment interest rate to use in its calculation and the correct date for prejudgment interest to begin to accrue.