*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RESURRECTION BAY AUTO PARTS, INC. and DILLIP MULLINGS, | ) ) ) | Supreme Court No. S-15139 |
| Appellants, | ) | Superior Court No. 3AN-11-07991 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| DENNIS ALDER, | ) | No. 6969 - November 28, 2014 |
| | ) | |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Joe P. Josephson, Josephson Law Offices, LLC, Anchorage, for Appellants. Dani Crosby and Eva R. Gardner, Ashburn & Mason, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

This case arises from a dispute over whether the manager of an auto-parts store was owed overtime pay. The employer claims the manager was exempt from the overtime laws, but the superior court found he was not and awarded overtime pay and liquidated damages. The employer appeals.

Because the employer failed to show that the manager satisfied all four requirements of the overtime laws' exemption for executive employees, we affirm the finding that the manager is owed overtime pay under Alaska and federal law. We also affirm the superior court's award of liquidated damages, because the employer failed to carry his burden of demonstrating by clear and convincing evidence that he acted in good faith.

## II.    FACTS AND PROCEEDINGS

Dillip Mullings owned a NAPA auto-parts store in Seward called Resurrection Bay Auto Parts, Inc. Mullings hired Dennis Alder to be the store manager, a position Alder held from 2006 to 2010, when he was terminated. Alder did not keep a time card, but it is undisputed that he typically worked from 6:30 a.m. to 6:30 p.m. Monday through Friday. The extent of Alder's overtime is not at issue on appeal; Mullings concedes that Alder worked over 40 hours a week. It is also undisputed that Alder was paid a salary and did not receive overtime pay.

After Alder was terminated, he sought unemployment compensation from the State Department of Labor. The Department's Wage and Hour office determined that Alder was entitled to overtime pay and attempted, without success, to negotiate a settlement on his behalf with Resurrection Bay.

Alder then filed suit, alleging that Mullings and Resurrection Bay (collectively "Mullings")[1] had violated state and federal overtime laws. Mullings responded that Alder was an executive employee and therefore exempt.

Following a bench trial, the superior court decided that Alder did not fall within the executive exemption and that Mullings had failed to pay overtime

---

[1]    The superior court found that because Mullings controlled the business and acted as Alder's manager, he was Alder's "employer" for purposes of the Fair Labor Standards Act definition. This finding is not challenged on appeal.

compensation required by law. The court awarded $48,125 in overtime pay and imposed an equal amount of liquidated damages against Mullings for a total award to Alder of $96,250.

Mullings appeals the superior court's decisions (1) that Alder was not exempt from the overtime laws, and (2) that liquidated damages were appropriate under the circumstances.

## III.   STANDARDS OF REVIEW

Whether an employee falls within an employee exemption from overtime pay is a mixed question of law and fact.[2] "We set aside a lower court's factual findings only when they are clearly erroneous," that is, "when, after a review of the record as a whole, we are left with a definite and firm conviction that a mistake has been made."[3] We review de novo the superior court's application of the law to established facts, applying our independent judgment.[4]

In reviewing an award of liquidated damages, "[t]he question of whether an employer has shown good faith and reasonableness by clear and convincing evidence is a mixed question of law and fact."[5]

> [F]actual findings will be overturned only if they are clearly
> erroneous, but an application of the law to established facts
> will be reviewed de novo. Once it is established that the
> superior court did not err in finding clear and convincing

---

[2]     *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 883-85 (Alaska 2004).

[3]     *Id.* at 883-84 (quoting *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000)) (internal quotation marks omitted).

[4]     *Id.* at 884 (citing *Wyller v. Madsen*, 69 P.3d 482, 485 (Alaska 2003)).

[5]     *Air Logistics of Alaska, Inc. v. Throop*, 181 P.3d 1084, 1097 (Alaska 2008).

evidence of good faith and reasonableness, the superior court's decision regarding whether or not to award any level of liquidated damages is reviewed for abuse of discretion.[6]

## IV.  DISCUSSION

### A.  Mullings Did Not Satisfy His Burden Of Proving That Alder Was Exempt From The Alaska Wage and Hour Act's Overtime Pay Requirements.

"The Alaska Wage and Hour Act (AWHA) governs the payment of overtime."[7]  It provides that "[i]f an employer finds it necessary to employ an employee for hours in excess of the limits set in this subsection, overtime compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid."[8]  The limits defined by the subsection include work in "excess of eight hours a day" and "in excess of 40 hours a week."[9]  A federal statute, the Fair Labor Standards Act (FLSA), applies concurrently and requires overtime pay under circumstances identical to those

---

[6]  *Id.* at 1097 (footnote omitted).

[7]  *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 351 (Alaska 2011) (citing AS 23.10.050-.150).

[8]  AS 23.10.060(b).

[9]  *Id.*

identified in the AWHA.[10]  The terms used in the AWHA, if not defined in Alaska law, carry the definitions used in the FLSA.[11]

There is no dispute on appeal that both the AWHA and the FLSA apply to Mullings as an employer and that Alder worked a number of hours defined as overtime during the relevant period.  Mullings, however, challenges the superior court's finding that Alder was not exempt from the overtime laws.  The AWHA and the FLSA — including their overtime pay requirements — do not apply to "bona fide executive, administrative, or professional" employees.[12]  Under both state and federal law, exemptions "are to be narrowly construed against the employer."[13]  Under both laws, the burden of proof is on the employer to prove that an exemption applies.[14]

---

[10]    *See* 29 U.S.C. §§ 207(a)(1), 213(a)(1) (2012).  We have held before that the AWHA is not preempted by the FLSA.  *Quinn v. Alaska State Emps. Ass'n/Am. Fed'n of State, Cnty. & Mun. Emps., Local 52*, 944 P.2d 468, 471 (Alaska 1997) ("After comparing the history and purposes of the two Acts, we concluded that FLSA did not explicitly or implicitly preempt AWHA in its entirety.  We also determined that AWHA's more generous minimum wage, overtime pay, and liquidated damages provisions did not actually conflict with similar provisions in FLSA." (citation omitted)) (citing *Webster v. Bechtel, Inc.*, 621 P.2d 890, 900-905 (Alaska 1980).

[11]    AS 23.10.145.

[12]    AS 23.10.055(b)-(c)(1); 29 U.S.C. § 213(a)(1).

[13]    *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 884 (Alaska 2004) (quoting *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1372 (Alaska 1993)) (internal quotation marks omitted); *Solis v. Washington*, 605 F.3d 1079, 1088 (9th Cir. 2011).

[14]    *Solis*, 656 F.3d at 1088 (Under the FLSA, "the employer has the burden of showing that a particular exemption applies."); *Fred Meyer*, 100 P.3d at 884 (citing *Dayhoff*, 848 P.2d at 1371-72).

The superior court held that Mullings "had the burden of proving the
(continued...)

Alaska's law specifically directs that for purposes of its exemptions, the term "bona fide executive" employee "has the meaning and shall be interpreted in accordance with 29 U.S.C. 201 – 219 [FLSA] as amended, or the regulations adopted under those sections."[15] Under the federal rule, an "employee employed in a bona fide executive capacity" includes any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring,

---

[14](...continued)
exemption by clear and convincing evidence," citing *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 691 (4th Cir. 2009). We have held, however, that employers are required to prove AWHA exemptions "beyond a reasonable doubt." *Fred Meyer*, 100 P.3d at 884; *Dayhoff*, 848 P.2d at 1371-72. Although the burden-of-proof issue is not raised on appeal, we note that other than the Fourth, the circuits that have explicitly adopted a standard of proof for the applicability of FLSA exemptions require proof by a preponderance of the evidence. *See Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 646 (6th Cir. 2013); *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1158 (10th Cir. 2012); *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007); *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 n.5 (11th Cir. 1991); *Dickenson v. United States*, 353 F.2d 389, 392 (9th Cir. 1965) .

[15]     AS 23.10.055(c)(1).

firing, advancement, promotion or any other change of status of other employees are given particular weight.[16]

The superior court found that Mullings proved only the first of these requirements: it was undisputed that Alder's salary met the regulatory threshold of "not less than $455 per week." As for the other three requirements, the superior court found that Alder's primary duties were not managerial, that he did not customarily and regularly direct the work of two or more other employees, and that he did not have any significant influence on decisions about hiring and firing. Since all four requirements must be met before an exemption applies,[17] the superior court concluded that Mullings had failed to prove that Alder was an exempt executive employee.

The focus of Mullings's argument on appeal is that for purposes of the exemption's second requirement, Alder's "primary duty" was management. The evidence at trial was conflicting.[18] However, as noted above, all four requirements of the exemption must be satisfied before the exemption applies. The third requirement — proof that the employee "customarily and regularly directs the work of two or more other employees" — is the most precisely defined of the four and the one Mullings clearly failed to meet.

---

[16]    29 C.F.R.§ 541.100(a)(1)-(4) (2014).

[17]    *Dayhoff*, 848 P.2d at 1372.

[18]    The superior court found that Mullings managed the business and Alder "was essentially reduced to a team leader of the customer service employees," with his duties "limited to ensuring that the store was closed and opened, that inventory was received by the store, that the store was staffed, and that employees complied with rules." While Alder clearly performed many duties that would be considered "management" under the federal definition, 29 C.F.R. § 541.102 (2014), the more difficult issue was whether they constituted his "primary duties" or were instead secondary to ministerial duties such as serving customers on the retail floor. *See Fred Meyer*, 100 P.3d at 884-85.

Under federal law — which the AWHA incorporates[19] — "two or more other employees" means "two full-time employees or their equivalent," in total 80 hours of work per week.[20] The phrase "customarily and regularly" means "a frequency that must be greater than occasional but which, of course, may be less than constant."[21]

There was evidence that Alder directed the work of other store employees when they were present. However, the evidence fell short of proving that Alder "customarily and regularly direct[ed] the work of two other full-time employees." The court found at the conclusion of trial that "it was rare for two full time employees to be present" at the store, and Mullings's own evidence bore this out.

Trial Exhibit 3 was a schedule that Mullings testified he prepared at the request of the Alaska Department of Labor, representing employees' hours from May 2008 through September 2010, the period at issue. Mullings testified the exhibit was "accurate as far as required time," though he also testified it did not reflect whether an

---

[19]    AS 23.10.145.

[20]    29 C.F.R.§ 541.104 (2014); *see Sec'y of Labor v. Daylight Dairy Prods., Inc.*, 779 F.2d 784, 787 (1st Cir. 1985) (citing Department of Labor handbook for rule that "the total number of hours supervised [must exceed] 80" and concluding "that the 80-hour rule is reasonable: it is easy to apply and allows employers to be confident that they are complying with the statute"), *disapproved of on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273, 277 (W.D.N.Y. 2007) ("[T]he Regulations and case law provide that plaintiff must direct at least 80 hours of subordinate work a week to be exempt."); *Perez v. RadioShack Corp.*, 386 F. Supp. 2d 979, 989 (N.D. Ill. 2005) ("[T]he court defers to the regulations and case law, all of which suggest that the FLSA imposes a bright-line 80 hours per week subordinate supervision requirement in order for the executive exemption to apply."). There are recognized exceptions to the 80-hour rule, not applicable here, "where the industry as a whole has a standard workweek of slightly less than 40 hours." *Daylight Dairy*, 779 F.2d at 787 n.2.

[21]    29 C.F.R. § 541.701 (2014).

employee actually worked as scheduled — if, for example, an employee was out sick. According to Exhibit 3, there was just one other full-time employee scheduled to be present at the store throughout 2008 when Alder was working.[22] In 2009, there was one other full-time and one part-time employee present at the store when Alder was working, for a total of at most 53 hours a week of other employees' time under Alder's supervision. The schedule for 2010 shows that there was just one other full-time employee in the store from January through May; from June through August there was one full-time employee and one close-to-full-time employee in the store on weekdays, totaling at most (in August) 68.5 hours of other employees' time under Alder's supervision. During none of these documented periods, thus, did Alder meet the regulatory minimum of supervising "two full-time employees or their equivalent" totaling 80 hours. And although he may have come close in the summer of 2010, a few months of supervising even 80 hours of other employees' time does not meet the requirement that the supervision be "customary and regular" in the context of the two years at issue.[23]

---

[22] Mullings contends that he was a full-time employee himself for purposes of the supervision requirement, not only while he was physically present in the store but also while he was away, as he considered himself constantly on call. But we reject the notion that an employer may also be an employee under another employee's supervision for purposes of satisfying this requirement of the exemption. *See* AS 23.30.395(19), (20) (defining "employee" to mean "an employee employed by an employer" and defining "employer" to mean "a person employing one or more persons").

[23] Because it is unnecessary in this case, we do not establish bright-line rules about the number of hours necessary to qualify other employees as "full time" for purposes of the supervision requirement or the amount of the plaintiff's own time that must involve supervision before it may be considered a "customary and regular" part of the plaintiff's duties. *See, e.g.*, *Daylight Dairy*, 779 F.2d at 788 ("[T]he district court determined that no manager in the category at issue met the 80-hour requirement more
(continued...)

Mullings failed to prove this requirement; there is no evidence in the record from which the superior court could have reached a different conclusion. And because one of the four requirements for the exemption was plainly not met and all four are necessary for the exemption to apply, we need not discuss the others.[24]

## B. The Superior Court Did Not Clearly Err By Finding That Mullings's Failure To Pay Alder Overtime Was Not In Good Faith, Justifying Liquidated Damages.

The AWHA provides that a violating employer "is liable to an employee affected in the amount of unpaid minimum wages, or unpaid overtime compensation . . . and, except as provided in (d) of this section, in an additional equal amount as liquidated damages."[25] After finding Mullings liable under both the AWHA and the FLSA, the

---

[23](...continued)
than 76 percent of the time. We agree with the district court's conclusion that this falls short of 'regular and customary' supervision of 80 hours of work."); *but see Murray v. Stuckey's, Inc.*, 50 F.3d 564, 568 (8th Cir. 1995) (disagreeing with *Daylight Dairy* that 76 percent falls short of "regular and customary" but finding that supervising "at least two or more employees who worked eighty hours per week 98.2% of the time . . . is 'customarily and regularly' by any definition"). The court in *Murray* also observed that under Department of Labor guidelines, a 40-hour week "is not a rigid standard" for defining full-time employment. *Id.*

[24] In his reply brief, Mullings for the first time argues the applicability of the administrative employee exemption found in AS 23.10.055(a)(9)(A) and 29 U.S.C. § 213(a)(1) (2012). He did not raise the argument below or address it in his opening brief on appeal, and we therefore consider it waived. *See Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 337 (Alaska 2012) (citing *Gunter v. Kathy-O-Estates*, 87 P.3d 65, 69 n.10 (Alaska 2004)).

[25] AS 23.10.110(a). The FLSA provides for the same damages. 29 U.S.C. § 216(b) (2012); *see Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 957 (8th Cir. 1999) ("An award of liquidated damages under § 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in

(continued...)

superior court calculated unpaid overtime damages under each law and awarded the greater of the two (the AWHA award, $48,125.10), plus the same amount in liquidated damages, for a total of $96,250.20.

The AWHA allows the court to decline to award liquidated damages, or to award an amount less than that set out in the statutory formula, "if the defendant shows by clear and convincing evidence that the act or omission giving rise to the action was made in good faith and that the employer had reasonable grounds for believing that the act or omission was not in violation of AS 23.10.060."[26]  "This provision contains both a subjective element — that the employer acted in good faith — and an objective element — that the employer reasonably believed it was not violating AWHA's overtime provision."[27]  The superior court found that Mullings failed to prove  he was entitled to this good-faith defense by clear and convincing evidence.

In *Air Logistics of Alaska, Inc. v. Throop*, we reviewed a number of cases that had considered the issue of good faith in the context of overtime claims under the FLSA.[28]  We identified "[c]ertain factors . . . that are repeatedly relied upon by the courts," among which was that "an employer who does not take affirmative steps to learn the law will not be able to show good faith and reasonableness."[29]  This factor is reflected in the AWHA:  "Failure to inquire into Alaska law is not consistent with a claim of good

---

[25](...continued)
violation of the FLSA." (citation omitted)).

[26]    AS 23.10.110(d).  The federal statute gives the court similar discretion to decline to award liquidated damages in cases of good faith.  29 U.S.C. § 260 (2012).

[27]    *Air Logistics of Alaska, Inc. v. Throop*, 181 P.3d 1084, 1097 (Alaska 2008).

[28]    *Id.* at 1098.

[29]    *Id.*

faith under this subsection."[30] We further observed in *Air Logistics* that "courts often examine whether the employer went to counsel for advice, and some cases indicate that reliance on counsel alone can be sufficient to establish good faith and reasonableness."[31] Reliance on advice from the Department of Labor may also indicate good faith.[32]

In *Air Logistics*, we affirmed a finding of good faith because the company's management showed that it had taken affirmative steps to learn the law before enacting new overtime rules: it had taken its proposed pay plan to the Department of Labor "to ensure compliance with applicable laws" and, following several meetings and phone calls, had received approval from an agency supervisor.[33] The company had also shown its plan to its lawyer and "provided employees with detailed information about the plan."[34]

In this case, in contrast, the superior court found that Mullings made "no reasonable or active efforts . . . to educate himself" about the overtime laws. Mullings argues that the superior court clearly erred by not inferring good faith from (1) his attendance at NAPA franchisees' conferences where representatives from the Department of Labor discussed overtime requirements, (2) his compliance with the NAPA payroll guidelines for employee compensation and raises, and (3) Alder's failure to request overtime despite his greater experience in store management.

---

[30]     AS 23.10.110(g).

[31]     *Air Logistics*, 181 P.3d at 1098 (footnote and citation omitted).

[32]     *Id.* at 1098-99 (citation omitted).

[33]     *Id.* at 1099.

[34]     *Id.*

But the evidence supports the superior court's conclusion that any affirmative efforts Mullings made, unlike those in *Air Logistics*, were not meaningful. Direct consultation with an attorney or the Department of Labor may well have flagged the issue of whether Alder was properly treated as an exempt employee.[35] But Mullings's attendance at the NAPA conferences apparently failed to prompt any further inquiry, despite presentations by the Department of Labor. Mullings did not consult a lawyer about wage and hour issues. Nor is it apparent whether Mullings correctly implemented the NAPA guidelines or justifiably relied on them; the guidelines are not in the record. That Alder never requested overtime is of no significance, as the duty to inquire was Mullings's, not Alder's. The absence of any evidence that Mullings inquired into whether Alder was properly exempt from the overtime laws supports the superior court's finding that Mullings failed to prove his good faith by clear and convincing evidence. We therefore need not reach the question whether Mullings had reasonable grounds for believing his omission did not violate the law. The superior court's award of liquidated damages was not an abuse of discretion.

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[35] According to Mullings, a Department of Labor representative informed him after the fact that to avoid liability would have been "as simple as coming to [the Department] and sitting down and writing . . . out an agreement between [Mullings] and [Alder], . . . stating what would be regular time, what would be overtime, encompassing what the salary would be for that."