NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RACHEL YOULD, | ) | |
| | ) | Supreme Court No. S-15090 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-12645 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| BRETT YOULD, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1557 – November 12, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Rachel Yould, pro se, Fort Worth, Texas, Appellant. Kneeland Taylor, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

1.      The primary issues in this appeal are the propriety of the superior court's entry of default against Rachel Yould and its subsequent divorce decree and property division. Seeing no error by the superior court which would have affected the ultimate outcome of this case, we affirm its rulings.

2.      Rachel and Brett Yould married in 2000 in Alaska. They have no children. In September 2010 Rachel pleaded guilty to a number of federal crimes

---

[*]      Entered under Alaska Appellate Rule 214.

involving fraud. She was ordered to pay about $750,000 in restitution to six creditors and incarcerated in a federal prison in California (FCI Dublin).

3.    In December 2011 Brett, represented by counsel, filed for divorce in Alaska. Alaska attorney Ryan Roley entered a limited appearance to file Rachel's answer, in which she agreed to the divorce and an equitable property settlement. Roley also stated that future service of papers for Rachel should be made to a retired New Jersey attorney, Paul S. Holdorf. Brett objected to Roley's limited appearance and to Holdorf's acting as a service agent for Rachel. The superior court issued an order that Rachel could be served at Holdorf's address in New Jersey or at FCI Dublin.

4.    In March 2012 the superior court held a trial setting conference, and Roley again made a limited appearance for Rachel. Holdorf also participated by telephone, although Rachel did not; Holdorf stated that he was not acting as an attorney for Rachel. The attorneys and Holdorf agreed that it appeared the property division's primary focus would be debt, probably related to pre-marital student loans and Rachel's federal restitution responsibility. Brett's attorney indicated he planned to keep his discovery requests simple and to get a financial release form from Rachel so he could independently obtain financial information. Holdorf stated he would coordinate discovery with Brett's attorney. The court delayed trial until early October to accommodate Rachel's logistical difficulties, although Brett expressed concern that Rachel planned to seek continued delay. The court scheduled a late May 2012 status hearing to monitor discovery progress. In late March Roley withdrew his limited appearance for Rachel, stating that he had advised Rachel, through Holdorf, of all relevant deadlines.

5.    In early May Brett sought an order compelling Rachel to make required initial disclosures, respond to discovery requests, and sign release forms. Rachel responded with Holdorf's assistance, alleging that Roley had misled her into

thinking she had time extensions to make disclosures and respond to discovery, that prison restrictions made it difficult to prepare for trial, that she could not afford to retain an attorney and likely would need a trial delay; she indicated that she would not be participating in the status hearing. The court ordered any future papers Holdorf signed on Rachel's behalf be returned to him because he was not authorized to practice law in Alaska.

6. Only Brett's attorney, Kneeland Taylor, was present at the late May status hearing. Taylor suggested the court set a trial date and then issue an order allowing Rachel to participate by telephone and asking FCI Dublin to assist Rachel in attending trial. The court scheduled trial for early October, directed Taylor to prepare the order he suggested, and set a status hearing for late August. The next day the court mailed Rachel orders for the August status hearing and the October trial date; the trial date order further directed the parties that remaining initial disclosures had to be made within 15 days. Also that day the court signed and mailed to Rachel an order granting Brett's motion to compel discovery responses, directing Rachel to respond by early July. In mid-June the court signed the order Taylor prepared to help Rachel participate in the October trial.

7. In July Brett requested sanctions against Rachel because her initial disclosures were incomplete and Rachel had returned the release forms without signatures. Rachel's untimely and lengthy response focused on logistical difficulties defending the case from prison. Rachel also filed a separate "memorandum" promising a number of future motions and requesting time extensions for all future briefing and further delay of the trial date. The court's early August order did not impose sanctions but required that Rachel respond to all discovery requests and abide by discovery rules. The order made clear that Rachel would not be allowed to introduce for the first time at trial evidence which should have been produced earlier.

8.    In late August Rachel filed motions requesting: (1) reconsideration of the court's ruling on Brett's motion for sanctions; (2) comprehensive time extensions in briefing and delay of the October trial date; and (3) procedural clarification. The time-extension motion detailed Rachel's difficulties due to her incarceration and requested 90 additional days to conduct discovery — including completing her initial disclosures — a nine-month trial delay, and a standing order extending all response and reply deadlines by 14 days. Rachel also stated she would not be attending the late August status hearing. Brett opposed Rachel's motion for time extensions and trial delay. The court denied the motion for reconsideration.

9.    Only Taylor was present at the late August status hearing. Taylor explained that Brett did not oppose Rachel's motion for clarification and asked that the mid-September trial call be vacated because a specific October trial date was already set. The court vacated the trial call date. In September the court responded to Rachel's motion for clarification and denied her time-extension motion. In early October Rachel requested that the court reconsider its denial of her time-extension motion.

10.    Both Rachel — by telephone — and Taylor were present for the early October trial date. Taylor stated that Brett opposed Rachel's motion to reconsider her time-extension motion, adding that Rachel still had not clarified what property division she wanted from the divorce. Rachel explained that she was unprepared for trial and that she had not received Brett's trial exhibits due to prison mail room delays. The court granted in part Rachel's motion to reconsider her time-extension motion and continued trial to early November, clarifying that it was doing so only because Rachel had been unable to review Brett's trial exhibits. The court also asked Rachel if prison staff had arranged a place for her to be that day from where she would be "comfortable enough to conduct trial." Rachel responded that they had. A few days later the court faxed FCI Dublin a calendaring order with the November trial date.

11. Both Rachel — by telephone — and Taylor were present for the early November trial date. Rachel again stated she was unprepared for trial, claiming she had been given inadequate time to prepare, she had been relocated to a different prison unit in between the two trial dates, Holdorf possessed the documents she intended to file, and a large storm where he lived had cut off all electricity and postal communications. Rachel stated she had been working on discovery requests, including interrogatories and deposition questions. The court noted that discovery had closed but asked Rachel how much time she would need to prepare for trial after receiving responses to her discovery requests. Rachel said she needed two to three months. The court indicated that Rachel should complete her discovery requests within a week, and Rachel appeared to agree that she could meet the court's timeline. The court also informed Rachel that it did not need a trial brief from her, but it did need her Alaska Civil Rule 90.1 table for trial. The court set trial for early January 2013 and concluded by telling Rachel, "Please understand that this is intended to be the very, very, very last continuance, so do the very best that you can with the time that you've been allotted; okay?" Rachel responded, "I will do." That same day the court entered an order setting the January trial date and also setting a mid-December 2012 deadline for Rachel's Rule 90.1 table. The next day the court faxed FCI Dublin the calendaring order.

12. In late December Rachel filed a certificate of service indicating that she had submitted her discovery requests to Brett just five days prior. She also filed a lengthy trial brief asserting that it had been impossible for her to complete a Rule 90.1 table by the court's mid-December deadline because of difficulties arising from the early November storm and her incarceration. Rachel detailed logistical difficulties arising from her imprisonment — including that at the early November trial date she was "in handcuffs with a telephone receiver propped precariously and uncomfortably between [her] shoulder and ear" — and alleged that the trial court judge was biased against her

and in favor of Brett. Rachel also filed a "Motion for Limited Ruling" requesting that the court cancel the January trial date without setting a new date and enter an order dissolving the marriage immediately but delaying the division of the marital estate until an undefined future date. Rachel also stated that she anticipated the prison system relocating her — or at least her property — to a new prison at around the early January trial date and therefore "really [had] no choice but to cancel [her] participation" in the January trial. Brett opposed Rachel's Motion for Limited Ruling.

13. At the early January 2013 trial the in-court clerk called FCI Dublin and was informed that Rachel refused to come to the telephone. Brett moved for default, and the court granted his motion, stating that Rachel had "done as much as she could conceivably do while incarcerated to delay this process" — including giving "sometimes less than credible excuses" for delay — and that she appeared to be focused upon setting up an appeal, not litigating the substance of the case. Brett testified regarding his relationship with Rachel and each of their assets and liabilities. He also testified about Rachel's criminal convictions and imprisonment, testifying that he he had not participated in the underlying crimes. He submitted exhibits supporting his testimony. The court found Brett credible. Finding that Brett did not participate in Rachel's crimes, the court allocated the restitution judgment and all of the loan debt underlying that judgment to Rachel when dividing the couple's property.

14. In February the court entered a decree of divorce and findings of fact and conclusions of law regarding its entry of default, the divorce, and the property division. Rachel then filed this appeal.

15. Rachel argues that the superior court violated her due process rights by: (1) not ensuring her participation in the hearings leading up to the trial date; (2) vacating the September trial call date without giving her an opportunity to argue against doing so; (3) signaling at the August status hearing — at which Rachel was not

present — that it would likely deny her time-extension motion; (4) inadequately remedying "unconstitutional conditions of confinement" to ensure that she had a meaningful opportunity to participate; (5) failing to provide her adequate guidance; (6) refusing to grant in full her motions for continuance and to extend all customary deadlines; (7) not informing her before making its default findings of fact that it found not credible her assertions regarding her conditions of confinement; and (8) failing to keep the case docket updated and accurate. Rachel also argues that the superior court erred in allowing both Brett's counsel to communicate with federal officials regarding this case and federal officials to "interfere" with the case, and that it was biased against her and in favor of Brett.

16. Rachel's refusal to participate in the January trial[1] was inexcusable and not the result of any error she attributes to the court.[2] Rachel could have appeared telephonically at the January hearing and argued to the court her reasons for another extension; if that effort failed, she could have testified, cross-examined Brett, and

---

[1] Rachel does not deny that she refused to participate in the January trial. She instead essentially concedes this fact by arguing that had she been advised that she would have had one free, uncuffed hand at the January trial, she "would have" come to the telephone.

[2] *See Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 329 P.3d 980, 989 (Alaska 2014) ("In this case, Grace not only fails to identify any legal error; she also fails to show any way that the [court's alleged error] affected the ultimate decision in this case. Thus Grace has failed to show any error that would require us to reverse the superior court's decision." (citing Alaska R. Civ. P. 61)); *Hill v. Giani*, 296 P.3d 14, 22 n.23 (Alaska 2013) ("We must disregard harmless errors that have no substantial effect on the rights of the parties or on the outcome of the case."); *Municipality of Anchorage v. Devon*, 124 P.3d 424, 432 (Alaska 2005) ("In determining whether an error was harmless, we examine whether it affected the final verdict."); *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 531 (Alaska 1987) ("Even if a finding of fact or conclusion of law is erroneous, the mistake is not grounds for reversal if the finding or conclusion is not necessary to the court's ultimate decision.").

presented to the court her requests and arguments regarding the marital estate. She chose not to do so. Throughout the year-long pendency of the case, Rachel could have disclosed, to the best of her ability, useful knowledge about the marital estate and argued for whatever outcome she considered fair.[3] Instead she submitted numerous lengthy procedural filings while arguing that she had insufficient time for substantive work on the case.[4]

17. We have reviewed the numerous instances for which Rachel now contends that the trial court judge's actions, inactions, or statements revealed bias and we have found no indication of bias in those instances, considered separately or as a

---

[3] Rachel's briefing to us largely argues facts not in the record; this is precisely what she should have testified about during the January trial when she refused to come to the telephone.

[4] Brett's skepticism regarding Rachel's assertions appears in some instances to be well-founded. For instance, Rachel repeatedly asserts to us that she never disputed that the restitution judgment was her debt alone. But in her initial disclosures Rachel had stated:

> For the purposes of these divorce proceedings, I do not believe it makes sense to treat the restitution sum as a separate debt. It is not a separate debt. It is an umbrella under which some of my debt has been placed in association with a criminal matter that does nothing to dissolve civil financial responsibilities. My restitution amount is comprised of various different debts, which may or may not be deemed marital debt. . . . It is my belief that these proceedings should consider all debts as they are reflected in current lender agreements, which remain in effect and enforceable despite the assignment of restitution responsibilities. My restitution payment responsibilities do not dissolve lender agreements or absolve other parties of their joint responsibilities for this debt.

*1557*

whole.[5] Far from taking arbitrary or unduly harsh action on Rachel's requests, the court ultimately granted Rachel two continuances at the October and November trials — the first for almost one month and the second for two months more. At the November trial the court also reopened discovery for Rachel, coordinated the timeline for discovery requests between her and Brett, and informed her that in preparation for trial she needed to file only the Rule 90.1 table, not a trial brief.

18. Rachel appears to argue that the superior court erred in finding Brett's testimony credible. "The trial court's factual findings enjoy particular deference when they are based primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[6] Trial courts are "in a better position to assess the credibility of the witnesses, the overall persuasive force of the evidence, and the persuasiveness of the expert testimony."[7] Having reviewed Brett's testimony, we see no reason to question the court's credibility finding.

19. Rachel appears to argue that the court abused its discretion regarding the arrangements it made for transferring an antique gun from Brett to Rachel's family.

---

[5] *See Ronny M. v. Nanette H.*, 303 P.3d 392, 409 (Alaska 2013) ("No bias is shown if a judge derives an opinion based on the record, and the opinion is supported by the record.").

[6] *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)) (internal quotation marks omitted); *see also* Alaska R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

[7] *Kristina B. v. Edward B.*, 329 P.3d 202, 210 (Alaska 2014) (quoting *Stephanie F. v. George C.*, 270 P.3d 737, 749 (Alaska 2012)).

"The superior court exercises broad discretion in property division cases."[8] And "we review a trial court's equitable division of marital property under the abuse of discretion standard; we will not disturb it unless the result is clearly unjust."[9] The court's plan for transferring the gun was not an abuse of discretion.

20. Rachel argues that there has been no division of personal effects and that the ownership of a dog still needs resolution. But because Rachel did not raise these arguments with the superior court at trial, we conclude that she failed to preserve these issues for appeal.[10]

---

[8] *Sandberg v. Sandberg*, 322 P.3d 879, 886 (Alaska 2014).

[9] *Id.* (alteration omitted) (quoting *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011)).

[10] Rachel additionally argues that the court entered its final default and property division findings directly after her response was due, but before she received Brett's proposed findings, depriving her of her opportunity to respond. Rachel challenges several of the court's findings in its default findings of fact. But default was properly entered against Rachel because without legitimate reason she failed to appear for trial; the minor inaccuracies in the default findings were harmless.

Rachel also argues that the court's actions and inactions violated her equal protection rights because the court discriminated against her based upon her statuses as an incarcerated person, a convicted felon, and an indigent person. Rachel also states that the court's alleged bias deprived her of effective assistance of counsel because she represented herself. We do not reach these claims because Rachel has failed to adequately brief them. *See, e.g.*, *Foondle v. O'Brien*, 346 P.3d 970, 976-77 (Alaska 2015) ("Foondle identifies one of the issues on appeal as whether the superior court abused its discretion 'as to the amount of the award' of costs and attorney's fees to the public defenders. *His brief does not explain why* the amount was erroneous, however . . . . Any challenge to the amount of the attorney's fees award is not briefed and is therefore waived.") (emphasis added); *Kingery v. Barrett*, 249 P.3d 275, 285 (Alaska 2011) ("Kingery does not elaborate on these arguments or provide a single legal authority supporting either. He has therefore waived the arguments by inadequately

(continued...)

21. We therefore AFFIRM the superior court's entry of default, entry of a decree of divorce, and property division in this case.

---

**10** (...continued)
briefing them."); *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004) ("[E]ven when a pro se litigant is involved, an argument is considered waived when the party cites no authority and fails to provide a legal theory for his or her argument.").

In her reply brief Rachel appears to argue that the superior court committed an evidentiary error during the January trial. Because this argument was not raised in her opening brief, it is waived. *See, e.g.*, *Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 310 n.24 (Alaska 2014) ("He did not raise the argument below or address it in his opening brief on appeal, and we therefore consider it waived.").